Attorney Grievance Comm'n v. C. Trent Thomas, Misc. Docket AG No. 87, September Term, 2014

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT –** Court of Appeals disbarred lawyer who abandoned his representation of clients in two unrelated cases and dishonestly refrained from informing Bar Counsel that he had violated conditional diversion agreement. Such conduct violated Maryland Lawyers' Rules of Professional Conduct 1.1 (Competence), 1.3 (Diligence), 1.4(a)(2), 1.4(a)(3) (Communication), 1.5(a) (Unreasonable Fees), 1.16(d) (Terminating Representation), 8.1(b) (Disciplinary Matters), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), and 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice).

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 87

September Term, 2014

———————————————————————

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

C. TRENT THOMAS

———————————————————————

Barbera, C.J.
Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Jr., Glenn T. (Retired,
Specially Assigned),

JJ.

———————————————————————

Opinion by Watts, J.

———————————————————————

Filed: December 16, 2015

This attorney discipline proceeding involves a lawyer who abandoned his representation of clients in two unrelated cases and dishonestly refrained from informing Bar Counsel that he had violated a conditional diversion agreement.[1]

Charles Trent Thomas ("Thomas"), Respondent, a member of the Bar of Maryland, agreed to represent Zakary Lee ("Lee") in a criminal case, and agreed to represent Wanda Sue Sines ("Sines") in a separation and divorce matter and in a guardianship matter. Thomas abandoned his representation of both Lee and Sines; Thomas failed to attend a hearing in Lee's criminal case, never filed a complaint for divorce on Sines's behalf, and did not call any witnesses at the hearing in Sines's guardianship matter. Lee's mother and Sines filed complaints against Thomas with the Attorney Grievance Commission ("the Commission"), Petitioner.

On February 11, 2015, on the Commission's behalf, Bar Counsel filed in this Court a "Petition for Disciplinary or Remedial Action" against Thomas, charging him with violating Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 1.5(a) (Unreasonable Fees), 1.16 (Declining or Terminating Representation), 8.1 (Bar Admission and Disciplinary Matters), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), and 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice).

On February 12, 2015, this Court designated the Honorable Daniel P. Dwyer ("the

---

[1] In a conditional diversion agreement, Bar Counsel agrees not to pursue disciplinary action against a lawyer, provided that the lawyer takes certain remedial actions. See Md. R. 16-736 (Conditional Diversion Agreement).

hearing judge") of the Circuit Court for Washington County to hear this attorney discipline proceeding.

On April 8, 2015, on the Commission's behalf, Bar Counsel filed in the Circuit Court for Allegany County a "Complaint for Temporary Restraining Order [and] Preliminary and Permanent Inju[n]ctive Relief" ("the Complaint") in which Bar Counsel sought, among other relief, a temporary restraining order and a preliminary injunction[2] that would prohibit Thomas from practicing law under Maryland Rule 16-776(a) (Injunction to Prevent Serious Harm).[3] On April 10, 2015, the Complaint was transferred to the hearing judge. On April 17, 2015, with Thomas in attendance, the hearing judge conducted a hearing on the Complaint. On that date, with Thomas's consent, the hearing judge issued a temporary restraining order that prohibited Thomas from practicing law until April 30, 2015.

On April 30, 2015, the hearing judge conducted a hearing on the propriety of a

---

[2]A temporary restraining order is "an injunction granted without opportunity for a full adversary hearing on the propriety of its issuance." Md. R. 15-501(c). A preliminary injunction is "an injunction granted after opportunity for a full adversary hearing on the propriety of its issuance but before a final determination of the merits of the action." Md. R. 15-501(b).

[3]Maryland Rule 16-776(a)(1) states:

> Upon receiving information that an attorney is engaging in professional misconduct and poses an immediate threat of causing (A) death or substantial bodily harm to another, (B) substantial injury to the financial interest or property of another, or (C) substantial harm to the administration of justice, Bar Counsel, with approval of the Chair of the Commission, may apply in accordance with the provisions of Title 15, Chapter 500 for appropriate injunctive relief against the attorney. The relief sought may include restricting the attorney's practice of law[.]

preliminary injunction; Thomas failed to attend. On that date, the hearing judge issued a preliminary injunction that prohibited Thomas from practicing law.

On June 30, 2015, the hearing judge conducted an evidentiary hearing in this attorney discipline proceeding; Thomas failed to attend. On August 31, 2015, the hearing judge filed in this Court an opinion including findings of fact and conclusions of law, concluding that Thomas had violated MLRPC 1.1, 1.3, 1.4, 1.5(a), 1.16(d), 8.1(b), 8.4(c), and 8.4(d).

On November 10, 2015, we heard oral argument[4] and disbarred Thomas. See Attorney Grievance Comm'n v. Thomas, ___ Md. ___, ___ A.3d ___, Misc. Docket AG No. 87, Sept. Term, 2014, 2015 WL 6955179, at *1 (Md. Nov. 10, 2015) (per curiam). We now explain the reasons for Thomas's disbarment.

## BACKGROUND

The hearing judge found the following facts, which we summarize.

On or about June 21, 2000, this Court admitted Thomas to the Bar of Maryland. At all relevant times, Thomas was a solo practitioner in Allegany County.

### Thomas's Representation of Lee

In or about October or November 2013, Lee was injured during an altercation with Kameron Kamp ("Kamp"). Lee's injuries included a broken jaw, and necessitated that Lee have his jaw wired shut and have his arm placed in a sling. Lee and his family incurred

---

[4]Thomas failed to attend oral argument or file anything in this Court. Thus, Thomas has not asked us to review, and we do not review, the propriety of the hearing judge's issuance of the preliminary injunction that prohibited Thomas from practicing law.

- 3 -

medical expenses as a result of his injuries. Lee pressed criminal charges of assault against Kamp, and Kamp pressed criminal charges of assault against Lee.

On or about January 6, 2014, Lee's mother, Renée Walker ("Walker"), retained Thomas to represent Lee in the defense of the criminal charge against him. Thomas charged a flat fee of $750, which was paid in full. Thomas told Walker also that it would be possible for Lee to sue Kamp in an attempt to obtain compensation for Lee's medical expenses. Walker provided Thomas with a list of people who could testify on Lee's behalf. Thomas failed to interview or subpoena any of the people.

A hearing in Lee's criminal case was scheduled for March 4, 2014. On the night of March 3, 2014, Walker telephoned Thomas. This was the first time that Lee or Walker had communicated with Thomas since January 2014. Thomas told Walker that he could not attend the hearing for personal reasons. Thomas failed either to offer to find another lawyer who could attend the hearing or raise the possibility of requesting a postponement. On March 4, 2014, without Thomas, Lee and Walker attended the hearing, at which they learned that the State planned to dismiss the charges against both Lee and Kamp. Lee and Walker never heard from Thomas again, despite Walker's attempts to discuss a possible civil action against Kamp and/or a refund of Thomas's fee.[5]

**Thomas's Representation of Sines**

In November 2010, Sines separated from her then-husband. Sines retained Thomas

---

[5]At the evidentiary hearing in this attorney disciplinary proceeding, Walker testified that, in the complaint that she filed against Thomas with the Commission, Walker stated that Thomas "told [her that] he would do a civil case, but nothing [] happened. He d[id]n't return any of [her] phone calls."

- 4 -

to represent her for purposes of her separation and to obtain a divorce when she had been separated for one year. Thomas charged Sines a flat fee, which Sines paid in full.

Thomas drafted a separation agreement, gave it to Sines, and told Sines to give it to her then-husband.[6] Thomas also made inquiries on Sines's behalf regarding title to some Holstein cattle.[7] These were the only two services that Thomas ever performed as to Sines's divorce matter; Thomas never filed a complaint for divorce on Sines's behalf.

In or about July 2011, Sines learned that her then-husband may have molested her daughter, a vulnerable adult with a disability. Sines retained Thomas to represent her for purposes of becoming her daughter's guardian. Thomas charged Sines a fee of approximately $1,000, which Sines paid in full. Two doctors evaluated Sines's daughter and provided the two medical/psychiatric opinions that were necessary for the appointment of a guardian of the person of a disabled person under Maryland Rule 10-202(a).[8] Thomas

---

[6]The hearing judge found that Thomas "gave [Sines] some documents relating to the separation[,] which she was to give to her estranged husband." At the evidentiary hearing in this attorney disciplinary proceeding, Sines testified that Thomas "drew up a paper[] separation . . . [and] asked [Sines] to deliver it to" her then-husband.

[7]At the evidentiary hearing in this attorney disciplinary proceeding, Sines testified that she had registered some Holstein cattle in her name, but then, without Sines's knowledge, "[s]omebody removed them out of [her] name and put them in [her] daughter's name[.]" Sines testified that, on her behalf, Thomas telephoned a member of "the Holstein Association" to inquire about the transfer of title to the Holstein cattle.

[8]Maryland Rule 10-202(a) states, in pertinent part:

[I]f guardianship of the person of a disabled person is sought, the petitioner shall file with the petition signed and verified certificates of (1) two physicians licensed to practice medicine in the United States who have examined the disabled person, or (2) one licensed physician who has examined the disabled person and one licensed psychologist or certified clinical social worker who has seen and evaluated the disabled person.

needed to file a petition for guardianship of the person of a disabled person within twenty-one days of the latest dated doctors' evaluations. See Md. R. 10-202(a) ("An examination or evaluation by at least one of the health care professionals under this subsection shall occur within 21 days before the filing of the petition [for guardianship of the person of a disabled person].").  Thomas failed to file a petition for guardianship of the person of a disabled person within the required twenty-one-day window, thus forcing Sines and her daughter to experience the expense and inconvenience of having Sines's daughter evaluated again.

Sines provided Thomas with the names of several people, including Sines's daughter's pediatrician, who would have testified in support of Sines becoming her daughter's guardian.  However, Thomas failed to interview any of the people; and, at the guardianship hearing, Thomas failed to call any witnesses.  The trial court did not appoint Sines as her daughter's guardian.

In January 2012, Sines texted Thomas to ask about the delay in proceeding with her divorce matter.  Thomas informed Sines that he was busy.  In March 2012, on several occasions, Sines unsuccessfully attempted to arrange an appointment with Thomas.  On March 26, 2012, Thomas e-mailed Sines to tell her to review a complaint for divorce that was attached to the e-mail.  Sines was unable to download and view the complaint for divorce. On March 28, 2012, Sines e-mailed Thomas to tell him to mail her a paper copy of the complaint for divorce.  Despite sending messages to Thomas in April, May, and June 2012, Sines never heard from Thomas again.  In June 2012, Sines filed a complaint against Thomas with the Commission.  Afterward, Thomas refunded "the prepaid fees" that he had

charged Sines.[9]

## The Conditional Diversion Agreement

On or about March 20, 2013, Thomas and Bar Counsel entered into a "Conditional Diversion Agreement" that partially arose out of Sines's complaint to the Commission. In the Conditional Diversion Agreement, which the hearing judge admitted into evidence, Thomas agreed to the following conditions, among others:

> [Thomas] will abstain from all use of alcohol and/or opiates[.] During the pendency of the [Conditional Diversion] Agreement, [Thomas] will attend Alcoholics Anonymous meetings at least once per week and provide Bar Counsel with proof of his attendance[.] Within thirty [] days of the date of th[e Conditional Diversion] Agreement, [Thomas] will arrange for counseling through the Alleg[]any County Health Department. [Thomas] will . . . waive confidentiality to the extent necessary for Bar Counsel to confirm that [Thomas] is receiving counseling for his substance abuse problems and that [Thomas] is abstaining from the use of alcohol and/or opiates[.] If, during the duration of th[e Conditional Diversion] Agreement, [Thomas] resumes the use of alcohol or opiates, [Thomas] will immediately voluntarily cease practicing law, notify all active clients, return files and unearned fees[,] and withdraw his appearance in any and all [c]ourt proceedings.

(Paragraph breaks omitted).[10] On or about May 15, 2013, the Commission approved the Conditional Diversion Agreement. On or about July 25, 2013, in accordance with the Conditional Diversion Agreement, Thomas enrolled in an "Outpatient Addictions Program" that was conducted by the Allegany County Health Department.

---

[9]The record reveals that Thomas refunded the fee that Sines paid for her separation and divorce matter. It is unclear whether Thomas also refunded the fee that Sines paid for her guardianship matter.

[10]In the Conditional Diversion Agreement, Thomas also agreed to "provide proof that he ha[d] refunded $1,500 to" Sines in connection with her separation and divorce matter.

On or about February 24, 2014, Thomas successfully completed an "Intensive Outpatient Program" and advanced to another program that required attending counseling sessions once per week. Between February 24, 2014 and July 2, 2014, however, Thomas attended only seven counseling sessions. As a result, on or about July 2, 2014,[11] Thomas was discharged from the program.

On or about August 26, 2014, Thomas again sought treatment. The Allegany County Health Department allowed Thomas to enroll in the program from which he had been discharged, provided that Thomas took a urinalysis test on that day. Thomas failed to take the urinalysis test, and was not re-enrolled in the program.

On August 28, 2014, Thomas consulted with a counselor and was again enrolled in the Intensive Outpatient Program, which now required attending counseling sessions three times per week. Thomas again failed to attend the required number of counseling sessions. As a result, Thomas was discharged yet again from the Intensive Outpatient Program. Thomas refrained from informing Bar Counsel of his two discharges, and also refrained from informing Bar Counsel that he was using alcohol and/or opiates. The hearing judge specifically found that Thomas's "failure to keep Bar Counsel informed was[] an attempt to continue practicing law and avoid the consequences of failing to attend the [counseling] program[s] and maintain his sobriety."

On September 16, 2014, Thomas's former counselor informed Bar Counsel that Thomas had been discharged from the Intensive Outpatient Program. As a result, on or

---

[11]The hearing judge inadvertently referred to July 2, 2013.

about December 17, 2014, the Commission revoked the Conditional Diversion Agreement.

## STANDARD OF REVIEW

Neither party excepts to any of the hearing judge's findings of fact; thus, we "treat the findings of fact as established[.]" Md. R. 16-759(b)(2)(A). In an attorney discipline proceeding, this Court reviews without deference a hearing judge's conclusions of law. See Md. R. 16-759(b)(1) ("The Court of Appeals shall review de novo the [hearing] judge's conclusions of law."). This Court determines whether clear and convincing evidence establishes that a lawyer violated an MLRPC. See Md. R. 16-757(b) ("The [Commission] has the burden of proving the averments of the petition [for disciplinary or remedial action] by clear and convincing evidence.").

## DISCUSSION

### (A) Conclusions of Law

Neither party excepts to the hearing judge's conclusions of law, all of which we uphold.

### MLRPC 1.1 (Competence) and 1.3 (Diligence)

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." MLRPC 1.1. "A lawyer shall act with reasonable diligence and promptness in representing a client." MLRPC 1.3.

Here, clear and convincing evidence supports the hearing judge's conclusion that Thomas violated MLRPC 1.1 and 1.3 in representing Lee. Walker provided Thomas with a list of people who could testify on Lee's behalf in his criminal case. Thomas failed to

- 9 -

interview or subpoena any of the people. Thomas also failed to attend the hearing in Lee's criminal case, offer to find another lawyer who could attend the hearing, or raise the possibility of requesting a postponement. The circumstance that the State dismissed the charges against Lee did not relieve Thomas of his duty to prepare for and attend the scheduled hearing in Lee's criminal case. Thomas also failed to pursue a civil lawsuit on Lee's behalf in an attempt to obtain compensation for Lee's medical expenses.

Clear and convincing evidence also supports the hearing judge's conclusion that Thomas violated MLRPC 1.1 and 1.3 in representing Sines. Despite being retained to obtain a divorce for Sines, Thomas never filed a complaint for divorce on Sines's behalf. Additionally, in Sines's guardianship matter, Thomas failed to timely file a petition for guardianship of the person of a disabled person. Furthermore, Sines provided Thomas with the names of several people, including Sines's daughter's pediatrician, who would have testified in support of Sines becoming her daughter's guardian. Thomas failed to interview any of the people; at the guardianship hearing, Thomas failed to call any witnesses; and the trial court did not appoint Sines as her daughter's guardian.

### MLRPC 1.4(a)(2) and 1.4(a)(3) (Communication)

"A lawyer shall: . . . (2) keep the client reasonably informed about the status of the matter; [and] (3) promptly comply with reasonable requests for information[.]" MLRPC 1.4(a).

Here, clear and convincing evidence supports the hearing judge's conclusion that

Thomas violated MLRPC 1.4(a)(2) and 1.4(a)(3)[12] in representing Lee. Thomas failed to contact Lee or Walker between January 2014 (the month in which Walker retained Thomas on Lee's behalf) and March 3, 2014 (when Walker telephoned Thomas the night before the hearing in Lee's criminal case). After March 3, 2014, Lee and Walker never heard from Thomas again, despite Walker's attempts to discuss a possible civil action against Kamp and/or a refund of Thomas's fee.

Clear and convincing evidence also supports the hearing judge's conclusion that Thomas violated MLRPC 1.4(a)(2) and 1.4(a)(3) in representing Sines. In March 2012, on several occasions, Sines unsuccessfully attempted to arrange an appointment with Thomas. On March 26, 2012, Thomas e-mailed Sines to tell her to review a complaint for divorce that was attached to the e-mail. Sines was unable to download and view the complaint for divorce. On March 28, 2012, Sines e-mailed Thomas to tell him to mail a paper copy of the complaint for divorce. Despite sending messages to Thomas in April, May, and June 2012, Sines never heard from Thomas again.

### MLRPC 1.5(a) (Unreasonable Fees)

"A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." MLRPC 1.5(a). "Although a fee for certain services may not be unreasonable on its face, the fee is unreasonable if the lawyer fails to perform the services to any meaningful degree." Attorney Grievance Comm'n v. Davy,

---

[12]Although the hearing judge concluded that Thomas violated "MLRPC 1.4" in representing Lee and Sines, the hearing judge clarified that he concluded that Thomas failed to keep Lee and Sines reasonably informed about the status of their matters and failed to promptly comply with reasonable requests for information.

435 Md. 674, 701-02, 80 A.3d 322, 338 (2013) (brackets, citation, and internal quotation marks omitted).

Here, clear and convincing evidence supports the hearing judge's conclusion that Thomas violated MLRPC 1.5(a) in representing Lee. Thomas charged a flat fee of $750 to represent Lee in his criminal case. Thomas failed to interview potential witnesses, issue subpoenas, or attend the hearing in Lee's criminal case. Thomas's fee was unreasonable because he failed to perform any meaningful services for Lee.

Clear and convincing evidence also supports the hearing judge's conclusion that Thomas violated MLRPC 1.5(a) in representing Sines. Thomas charged Sines a flat fee that was approximately $1,500 to represent her for purposes of her separation and divorce. Thomas never filed a complaint for divorce on Sines's behalf. Thomas also charged Sines approximately $1,000 to represent her for purposes of becoming her daughter's guardian. Thomas failed to timely file a petition for guardianship of the person of a disabled person, failed to interview potential witnesses, and failed to call any witnesses at the guardianship hearing. Although he ultimately refunded part of his fees, both of Thomas's fees were unreasonable because he failed to perform any meaningful services for Sines.

## MLRPC 1.16(d) (Terminating Representation)

"Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client . . . and refunding any advance payment of fee . . . that has not been earned[.]" MLRPC 1.16(d). "Termination of representation" includes abandonment of representation. See Attorney Grievance Comm'n v. Kum, 440 Md. 372, 384, 102 A.3d

777, 784 (2014) ("Where a lawyer abandons a client without notice through the failure to take meaningful steps in pursuit of the client's interest, and fails to return unearned portion of a fee paid by the client, he or she violates MLRPC 1.16(d)." (Brackets, citation, and internal quotation marks omitted)).

Here, clear and convincing evidence supports the hearing judge's conclusion that Thomas violated MLRPC 1.16(d) in representing Lee and Sines. Thomas abandoned his representation of Lee and Sines by abruptly and continuously failing to communicate with them and perform services for them; thus, Thomas effectively terminated his representation of Lee and Sines. Thomas never provided notice that he would be terminating his representation of Lee and Sines. Additionally, as discussed above, Thomas failed to earn the fees that he charged Lee and Sines and was paid; Thomas never provided Lee with a refund; and Thomas did not provide Sines with a refund until after she filed a complaint against him with the Commission.

### MLRPC 8.1(b) (Disciplinary Matters) and 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation)

"[A] lawyer . . . in connection with a disciplinary matter, shall not . . . fail to disclose a fact [that is] necessary to correct a misapprehension [that is] known by the [lawyer] to have arisen in the matter[.]" MLRPC 8.1(b). "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit[,] or misrepresentation[.]" MLRPC 8.4(c).

Here, clear and convincing evidence supports the hearing judge's conclusions that Thomas violated MLRPC 8.1(b) and 8.4(c). In the Conditional Diversion Agreement,

- 13 -

Thomas agreed to "abstain from all use of alcohol and/or opiates[,]" to "arrange for counseling" for substance abuse, and to "waive confidentiality to the extent necessary for Bar Counsel to confirm that [Thomas wa]s receiving counseling for his substance abuse problems[.]" On two occasions, Thomas was discharged from a substance abuse program for failing to attend the required number of counseling sessions. Thomas refrained from informing Bar Counsel of the two discharges, and also refrained from informing Bar Counsel that he was using alcohol and/or opiates. The hearing judge found that Thomas's "failure to keep Bar Counsel informed was[] an attempt to continue practicing law and avoid the consequences of failing to attend the [counseling] program[s] and maintain his sobriety." In other words, Thomas failed to disclose a fact that was necessary to correct Bar Counsel's impression that Thomas was complying with the Conditional Diversion Agreement. We agree with the hearing judge's determination that Thomas's refraining from informing Bar Counsel of his violations of the Conditional Diversion Agreement constituted dishonesty that was motivated by Thomas's desire to continue practicing law.

### MLRPC 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice)

"It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" MLRPC 8.4(d). "Generally, a lawyer violates MLRPC 8.4(d) where the lawyer's conduct would negatively impact the perception of the legal profession of a reasonable member of the public." Attorney Grievance Comm'n v. Shuler, 443 Md. 494, 505, 117 A.3d 38, 45 (2015) (brackets, citation, ellipsis, and internal quotation marks omitted).

Here, clear and convincing evidence supports the hearing judge's conclusion that

Thomas violated MLRPC 8.4(d) in representing Lee and Sines. As discussed above, Thomas abandoned his representation of Lee and Sines; thus, Thomas engaged in conduct that would negatively impact the perception of the legal profession of a reasonable member of the public. A lawyer violates MLRPC 8.4(d) by abandoning his or her representation of a client. See Shuler, 443 Md. at 505-06, 117 A.3d at 45 ("Shuler essentially abandoned her representation of [a client], and thus engaged in conduct that would negatively impact the perception of the legal profession of a reasonable member of the public.").

Clear and convincing evidence also supports the hearing judge's conclusion that Thomas violated MLRPC 8.4(d) in connection with the Conditional Diversion Agreement. For the purpose of continuing to practice law, Thomas dishonestly refrained from informing Bar Counsel that he was using alcohol and/or opiates and that, on two occasions, he had been discharged from a substance abuse program for failing to attend the required number of counseling sessions. In dishonestly refraining from informing Bar Counsel of these matters, Thomas engaged in conduct that would negatively impact the perception of the legal profession of a reasonable member of the public. Indeed, no reasonable member of the public would expect a lawyer to violate a conditional diversion agreement and dishonestly refrain from informing Bar Counsel as much so that the lawyer could continue to practice law. A lawyer violates MLRPC 8.4(d) by being dishonest with Bar Counsel in connection with a disciplinary matter. See Attorney Grievance Comm'n v. Brigerman, 441 Md. 23, 40-41, 105 A.3d 467, 477 (2014) ("[Brigerman] violated MLRPC 8.4(d) . . . when [Brigerman] misrepresented to Bar Counsel that he would send promptly [a client]'s case file to him, upon his written request.").

## (B) Sanction

The Commission recommended that we disbar Thomas, who failed to recommend a sanction.

In Shuler, 443 Md. at 506-07, 117 A.3d at 46, this Court stated:

> This Court sanctions a lawyer not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession. This Court accomplishes these goals by: (1) deterring other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is unfit to continue to practice law.

> In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (1) the MLRPC that the lawyer violated; (2) the lawyer's mental state; (3) the injury that the lawyer's misconduct caused or could have caused; and (4) aggravating factors and/or mitigating factors.

> Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MLRPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

> Mitigating factors include: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to the Commission or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful

rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the MLRPC; and (14) unlikelihood of repetition of the misconduct.

(Brackets, citation, and ellipses omitted).

In Attorney Grievance Comm'n v. De La Paz, 418 Md. 534, 557-58, 16 A.3d 181, 195 (2011), this Court disbarred a lawyer who violated MLRPC 1.1, 1.3, 1.4, 1.5, 1.16(d), 8.1(b), and 8.4(d). The lawyer

clearly neglected his clients, leaving one client to fend for himself at his own hearing and the other to lose his cause of action entirely for failure to prosecute. [The lawyer] also repeatedly ignored his clients' inquiries into the status of their cases, and then moved his practice without informing his clients of his new contact information. He then later declined to respond to Bar Counsel's requests for information.

Id. at 558, 16 A.3d at 195. This Court did not note any aggravating factors, and observed that there were no mitigating factors. See id. at 558, 16 A.3d at 195. This Court explained: "We previously have found disbarment to be appropriate when attorneys repeatedly neglect client affairs." Id. at 557-58, 16 A.3d at 195 (citations omitted).

Here, Thomas violated MLRPC 1.1, 1.3, 1.4(a)(2), 1.4(a)(3), 1.5(a), 1.16(d), 8.1(b), 8.4(c), and 8.4(d). Thomas abandoned his representation of Lee and Sines and dishonestly refrained from informing Bar Counsel that he was using alcohol and/or opiates and that, on two occasions, he had been discharged from a substance abuse program for failing to attend the required number of counseling sessions.

Thomas injured Lee by depriving him and/or Walker of $750 in exchange for no meaningful services, failing to attend the scheduled hearing in Lee's criminal case, and

- 17 -

failing to pursue a civil lawsuit on Lee's behalf in an attempt to obtain compensation for Lee's medical expenses. Thomas injured Sines by failing to file a complaint for divorce on Sines's behalf, forcing Sines and her daughter to experience the expense and inconvenience of having Sines's daughter evaluated one more time than was necessary in connection with Sine's guardianship matter, and failing to call any witnesses at the guardianship hearing. Ostensibly, Thomas's failure to call any witnesses played a role in the trial court's decision not to appoint Sines as her daughter's guardian. Additionally, in connection with Lee's matter, Sines's matters, and the Conditional Diversion Agreement, Thomas engaged in conduct that would negatively impact the perception of the legal profession of a reasonable member of the public.

We note seven aggravating factors. First, Thomas had a dishonest or selfish motive, as Thomas's refraining from informing Bar Counsel that he was using alcohol and/or opiates and that on two occasions he had been discharged from a substance abuse program for failing to attend the required number of counseling sessions, constituted dishonesty that was motivated by Thomas's desire to continue practicing law. Second, Thomas committed multiple violations of the MLRPC. Third, Thomas has substantial experience in the practice of law, as he had been a member of the Bar of Maryland for more than a decade at the time of his misconduct.[13] Fourth, Thomas has shown indifference to making

---

[13]Cf. Attorney Grievance Comm'n v. McDonald, 437 Md. 1, 46, 85 A.3d 117, 143 (2014) ("[H]aving worked as a prosecutor for over a decade before the events in this case occurred, McDonald had substantial experience in the practice of law that should have given him an experiential basis from which to know his actions were unethical." (Citation omitted)); Attorney Grievance Comm'n v. Worsham, 441 Md. 105, 136, 112, 114, 105

restitution, as he never provided Lee and/or Walker with a refund, and provided Sines with a refund only after she filed a complaint against him with the Commission.

Even more importantly, fifth, sixth, and seventh, Thomas has received prior attorney discipline, has demonstrated a pattern of misconduct, and has shown that he is likely to repeat his misconduct. In 2008, the Commission reprimanded Thomas by consent for violating MLRPC 1.3 (Diligence) by "fail[ing] to act with reasonable diligence and promptness in representing his client and fail[ing] to respond to requests for production of documents and evidence of causation in a timely manner[.]" Just two years later, this Court granted a joint petition to suspend Thomas from the practice of law in Maryland for sixty days for violating MLRPC 1.1 and 1.3. See Attorney Grievance Comm'n v. Thomas, 413 Md. 520, 993 A.2d 626 (2010). In 2010, Thomas began representing Sines in her separation and divorce matter. In 2011, Thomas began representing Sines in her guardianship matter. As discussed above, Thomas violated MLRPC 1.3 in both of Sines's matters.

On or about March 20, 2013, Thomas and Bar Counsel entered into the Conditional Diversion Agreement, which partially arose out of Thomas's representation of Sines. The Conditional Diversion Agreement stated that Thomas's "alleged misconduct" in Sines's separation and divorce matter included a violation of, among others, MLRPC 1.3. The Conditional Diversion Agreement also stated that Thomas "acknowledge[d] that he ha[d]

---

A.3d 515, 533, 519, 520 (2014) (This Court stated that a lawyer's misconduct was aggravated by "substantial experience in the practice of law" where, eleven years after this Court admitted the lawyer to the Bar of Maryland, the lawyer began frivolously "arguing that the federal government did not have the authority to tax his earnings as income.").

engaged in professional misconduct[.]"

Despite having consented to a reprimand by the Commission for violating MLRPC 1.3, having consented to being suspended from the practice of law in Maryland for sixty days for violating MLRPC 1.1 and 1.3, and having entered into a conditional diversion agreement that was based on a violation of, among others, MLRPC 1.3, Thomas violated MLRPC 1.3 in representing Lee in 2014. Thus, in three prior instances, Thomas acknowledged that he had violated MLRPC 1.3, then proceeded to violate MLRPC 1.3 again in a later case. Thomas's repeated violations demonstrate both a pattern of misconduct and the likelihood that, if permitted to continue to practice law, Thomas would continue to fail to act with reasonable diligence and promptness in representing clients.

The hearing judge did not find any mitigating factors, and we discern none. We observe that the record implies that Thomas has alcoholism. Specifically, in the Conditional Diversion Agreement, Thomas agreed to attend Alcoholics Anonymous meetings at least once per week and to abstain from all use of alcohol. As noted above, however, a lawyer's alcoholism is a mitigating factor if and only if, among other things, "the lawyer's recovery from [alcoholism] is demonstrated by a meaningful and sustained period of successful rehabilitation[.]" Shuler, 443 Md. at 507, 117 A.3d at 46 (citation omitted). Here, Thomas has not engaged in a meaningful and sustained period of successful rehabilitation; to the contrary, on two occasions, Thomas had been discharged from a substance abuse program for failing to attend the required number of counseling sessions. Thus, alcoholism does not mitigate Thomas's misconduct.

In agreement with the Commission, we concluded that the appropriate sanction for

Thomas's misconduct was disbarment. Here, as in De La Paz, 418 Md. at 557-58, 16 A.3d at 195, disbarment was the appropriate sanction for neglecting clients in two unrelated cases, failing to provide competent and diligent representation, failing to adequately communicate with clients, charging unreasonable fees, failing to properly terminate representation, and failing to provide information to Bar Counsel, all without a single mitigating factor.

If anything, disbarment was even more appropriate here than it was in De La Paz. For one reason, there were no aggravating factors in De La Paz; by contrast, here, as discussed above, there are multiple aggravating factors, including prior attorney discipline, a dishonest or selfish motive, indifference to making restitution, a pattern of misconduct, and a likelihood of repetition of the misconduct. Additionally, unlike the lawyer in De La Paz, Thomas violated MLRPC 8.4(c); specifically, for the purpose of continuing to practice law, Thomas dishonestly refrained from informing Bar Counsel that he was using alcohol and/or opiates and that, on two occasions, he had been discharged from a substance abuse program for failing to attend the required number of counseling sessions. "Absent compelling extenuating circumstances justifying a lesser sanction, intentional dishonest conduct by a lawyer will result in disbarment." Attorney Grievance Comm'n v. Katz, 443 Md. 389, 411, 116 A.3d 999, 1012 (2015) (brackets, citation, and internal quotation marks omitted). Here, there are no mitigating factors, let alone compelling extenuating circumstances, that would have justified a lesser sanction.

For the above reasons, on November 10, 2015, we disbarred Thomas and awarded costs against him.