Attorney Grievance Comm'n v. Jennifer Vetter Landeo, Misc. Docket AG No. 79, September Term, 2014

**ATTORNEY DISCIPLINE – SANCTIONS – INDEFINITE SUSPENSION FROM PRACTICE OF LAW IN MARYLAND WITH RIGHT TO APPLY FOR REINSTATEMENT AFTER NINETY DAYS –** Court of Appeals indefinitely suspended from practice of law in Maryland with right to apply for reinstatement after ninety days lawyer who, among other misconduct, failed to provide competent representation; failed to provide diligent representation in time-sensitive immigration matters and waited months to file documents in three separate immigration cases; failed to keep clients reasonably informed about status of matters, promptly comply with clients' reasonable requests for information, and explain matters to extent reasonably necessary to permit clients to make informed decisions regarding representation; charged and collected attorney's fees for services that she failed to provide to any meaningful degree or at all; failed to deposit attorney's fees and filing fees into attorney trust account; failed to deposit attorney's fees into attorney trust account prior to fees being earned and without clients' informed consent, confirmed in writing, to different arrangement; failed to reasonably protect her clients' interests and timely surrender papers and property to which clients were entitled; and engaged in conduct that would negatively impact perception of legal professional of reasonable member of the public. Such conduct violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.1 (Competence), 1.3 (Diligence), 1.4(a)(2), 1.4(a)(3), 1.4(b) (Communication), 1.5(a) (Reasonable Fees), 1.15(a), 1.15(c) (Safekeeping Property), 1.16(d) (Terminating Representation), 8.4(d) (Conduct That is Prejudicial to Administration of Justice), and 8.4(a) (Violating MLRPC).

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 79

September Term, 2014

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

JENNIFER VETTER LANDEO

_____

Barbera, C.J.
Battaglia
Greene
Adkins
McDonald
Watts
Hotten,

JJ.

_____

Opinion by Watts, J.

_____

Filed: February 19, 2016

This attorney discipline proceeding involves a lawyer who, in an extensive amount of misconduct, failed to provide competent representation; failed to provide diligent representation in time-sensitive immigration matters and waited months to file documents in three separate immigration cases; failed to keep her clients reasonably informed about the status of their matters, promptly comply with her clients' reasonable requests for information, and explain matters to the extent reasonably necessary to permit her clients to make informed decisions regarding the representation; charged and collected attorney's fees for services that she failed to provide to any meaningful degree or at all; failed to deposit attorney's fees and filing fees into an attorney trust account; failed to deposit attorney's fees into an attorney trust account prior to those fees' being earned and without the clients' informed consent, confirmed in writing, to a different arrangement; failed to reasonably protect her clients' interests and timely surrender papers and property to which the clients were entitled; and engaged in conduct that would negatively impact the perception of the legal professional of a reasonable member of the public.

Jennifer Vetter Landeo ("Landeo"), Respondent, a member of the Bar of Maryland, represented three immigrants—Brenda Castillo ("Castillo"), Jenny Flores ("Flores"), and Binia Martinez-Ramos ("Martinez-Ramos")—in matters concerning their immigration status. Landeo's clients and/or family members filed complaints against Landeo with the Attorney Grievance Commission ("the Commission"), Petitioner.

On December 30, 2014, on the Commission's behalf, Bar Counsel filed in this Court a "Petition for Disciplinary or Remedial Action" against Landeo, charging her with violating Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.1

(Competence), 1.3 (Diligence), 1.4 (Communication), 1.5(a) (Reasonable Fees), 1.15(a),

1.15(c), 1.15(d) (Safekeeping Property), 1.16(d) (Terminating Representation), 5.3(a),

5.3(b), 5.3(c) (Responsibilities Regarding Nonlawyer Assistants), 8.4(c) (Dishonesty,

Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct That is Prejudicial to the

Administration of Justice), 8.4(a) (Violating MLRPC).

On January 15, 2015, this Court designated the Honorable Steven G. Salant ("the

hearing judge") of the Circuit Court for Montgomery County to hear this attorney discipline

proceeding. On August 3, 4, and 5, 2015, the hearing judge conducted a hearing. On

September 28, 2015, the hearing judge filed in this Court an opinion including findings of

fact and conclusions of law, concluding that: (1) as to the Castillo matter, Landeo had

violated MLRPC 1.3, 1.4, 1.15, 1.16, and 8.4, but had not violated MLRPC 1.5; (2) as to

the Flores matter, Landeo had violated MLRPC 1.3, 1.4, 1.15, 1.16, and 8.4, but had not

violated MLRPC 1.5 or 5.3;[1] and (3) as to the Martinez-Ramos matter, Landeo had violated

MLRPC 1.1, 1.3, 1.4, and 8.4, but had not violated MLRPC 1.5[2], 1.16, or 5.3.[3]

On January 7, 2016, we heard oral argument. For the below reasons, we indefinitely

---

[1]The hearing judge noted that Bar Counsel had withdrawn the charge that Landeo had violated MLRPC 1.1 in the Flores matter; accordingly, the hearing judge did not reach a conclusion as to whether Landeo had violated MLRPC 1.1 in the Flores matter.

[2]The hearing judge stated that the Commission had not charged Landeo with violating MLRPC 1.5 in the Martinez-Ramos matter, but nevertheless concluded that Landeo had not violated MLRPC 1.5 in the Martinez-Ramos matter. A review of the Petition for Disciplinary or Remedial Action, however, demonstrates that the Commission had charged Landeo with violating MLRPC 1.5 in the Martinez-Ramos matter.

[3]In making conclusions of law as to all three matters, the hearing judge failed to specify any subsection of any MLRPC. For example, the hearing judge failed to expressly reach a conclusion of law as to whether Landeo had violated MLRPC 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation).

suspend Landeo from the practice of law in Maryland with the right to apply for reinstatement after ninety days.

## BACKGROUND

The hearing judge found the following facts, which we summarize.

On December 12, 2001, this Court admitted Landeo to the Bar of Maryland. Since January 2004, Landeo has worked at Landeo and Capriotti, LLC, which focuses on immigration law. Landeo is not fluent in any language other than English. Thus, Landeo uses bilingual office assistants to communicate with Spanish-speaking clients; none of the office assistants are certified interpreters or translators.

### The Castillo Matter

In 2003, Castillo, a native and citizen of Guatemala, entered the United States illegally. Castillo is fluent in Spanish, speaks little English, and cannot read English. In 2009, Castillo married Steven Keener, Jr. ("Keener"), a United States citizen. Keener is fluent in English, but not Spanish.

On February 23, 2012, Castillo and Keener met with Landeo for the first and only time. Castillo and Keener retained Landeo to file three documents on Castillo's behalf to assist Castillo in obtaining legal permanent resident status. The first document—Form I-130, or an "Immediate Family Petition"—would, if granted, allow Castillo to obtain a green card[4] through "consular processing," or applying in person at the United States consulate in Guatemala. The second document—Form I-601, or a "Waiver of Unlawful Presence"—

---

[4] A green card is "[a] registration card evidencing a resident alien's status as a permanent [United States] resident." Green Card, Black's Law Dictionary (10th ed. 2014).

would, if granted, allow Castillo to return to the United States without being subject to the rule that an illegal immigrant who returns to his or her home country cannot return to the United States for ten years. The third document was a visa[5] application.

Keener paid Landeo a $600 retainer and agreed to pay $200 per month for sixteen months, for a total of $3,800 in attorney's fees, plus a $520 filing fee,[6] for the Immediate Family Petition. Keener ended up paying Landeo a total of $3,000 in attorney's fees and the $520 filing fee. Landeo did not deposit the attorney's fees or filing fee into an attorney trust account, nor did Landeo have Castillo's and Keener's consent, confirmed in writing, to deposit the fees into an account other than an attorney trust account.

Landeo testified that she planned to refrain from filing the Immediate Family Petition until after the Department of Homeland Security promulgated an amendment to the regulation regarding waiver of unlawful presence.[7] Landeo failed to adequately convey, either herself or through her staff, to either Castillo or Keener that she planned to wait to file the Immediate Family Petition.

Landeo provided Castillo and Keener with a retainer agreement that was in English. Landeo did not provide a retainer agreement that was in Spanish. The retainer agreement stated: "I/We acknowledge that each and every part of this legal services agreement has

---

[5]"A visa is generally required for the admission of aliens into the United States." Visa, Black's Law Dictionary (10th ed. 2014).

[6]The actual filing fee was $420, but Landeo "routinely added $100 to [the] filing fee[] for 'direct costs.'"

[7]Specifically, under the amendment, a spouse of a United States citizen could apply for a "provisional waiver" of unlawful presence while remaining in the United States; once the applicant received the provisional waiver, he or she could go back to his or her country of origin with a good chance of returning to the United States soon thereafter.

been explained to me in Spanish by the person named below as an interpreter." The retainer agreement, however, did not name an interpreter, and no interpreter was present at the meeting; Castillo relied on Keener to communicate with Landeo.

In a letter dated April 16, 2012, Landeo requested that Castillo and Keener provide the $520 filing fee and the documents that were necessary to file the Immediate Family Petition. As of July 2012, Castillo and Keener had provided Landeo the filing fee and all of the documents that were necessary to file the Immediate Family Petition. On July 30, 2012, Landeo signed an attorney appearance form to be attached to the Immediate Family Petition. Landeo, however, did not file the Immediate Family Petition with the United States Citizenship and Immigration Services ("USCIS")[8] until nearly eight months later, on March 28, 2013. In the interim, on January 3, 2013, the Department of Homeland Security published the amendment to the regulation regarding waiver of unlawful presence; and, on March 4, 2013, the amendment became effective. The amendment in no way affected the form or substance of Immediate Family Petitions.

Between May 2012 and March 2013, Landeo never directly communicated with Castillo or Keener, despite Castillo's multiple attempts to speak with Landeo. Between May 2012 and March 2013, Castillo telephoned Landeo's office at least fifteen times requesting status updates and information as to the filing of the Immediate Family Petition.

---

[8]USCIS performs tasks that the United States Immigration and Naturalization Service, or INS, had performed until 2003. See U.S. Citizenship and Immigration Services, "Our History," http://www.uscis.gov/history-and-genealogy/our-history/our-history [http://perma.cc/VL59-B7SW]. USCIS administers services and processes most of the forms that immigrants file. See U.S. Citizenship and Immigration Services, "About Us," http://www.uscis.gov/aboutus [http://perma.cc/9UM9-4VTP].

Castillo requested that Landeo call her back, but Landeo failed to do so. Keener also attempted to speak with Landeo by telephone. Whenever Castillo and Keener telephoned Landeo's office to speak with Landeo, a member of the firm's staff told them that Landeo was "unavailable." When Keener was unable to speak with Landeo by telephone and requested a meeting with Landeo, the firm's office manager indicated that, under the retainer agreement, Keener would need to pay $250 for a meeting with Landeo.

Castillo and Keener decided to check the Immediate Family Petition's status on USCIS's website, but discovered that they needed the receipt number to monitor its progress. When Castillo and Keener telephoned Landeo's office, the firm's office manager told them that the Immediate Family Petition was "in process," which they took to mean that the Immediate Family Petition had been filed, and Landeo was awaiting a receipt number. On multiple later occasions, Castillo asked Landeo's office for a receipt number so that she could check the Immediate Family Petition's status on USCIS's website, and a member of the firm's staff told Castillo that Landeo was unavailable and that the staff member was not in a position to provide the receipt number. Landeo never explained to Castillo or Keener why she delayed in filing the Immediate Family Petition.

In March 2013, Castillo telephoned USCIS and learned that Landeo had not yet filed the Immediate Family Petition. On March 20, 2013, Keener telephoned Landeo's office and stated that he would stop paying fees until Landeo provided a receipt for the filing of the Immediate Family Petition. Eight days later, Landeo filed the Immediate Family Petition. Castillo and Keener had been unaware of any plan on Landeo's part to file the Immediate Family Petition in mid-March 2013. On April 4, 2013, the firm's office

manager telephoned Keener to tell him that he had a receipt number for the Immediate Family Petition. By that time, however, Keener had already told Landeo's office that he and Castillo were terminating Landeo's representation and were in the process of retaining a new lawyer. After the termination of her representation, Landeo sent Castillo and Keener a bill for $4,205.

On April 5, 2013, Castillo and Keener retained a new immigration lawyer, Xavier Racine ("Racine"), to file an Immediate Family Petition and a Waiver of Unlawful Presence. On that day, Racine sent to Landeo a letter in which he requested the contents of Castillo's file as well as a refund of unearned fees. On April 8, 2013, Landeo received the letter. In addition to sending the letter, Racine telephoned Landeo's office to facilitate the transfer of the file, but was unable to speak with Landeo; instead, Racine was able to communicate with Landeo only through an office assistant and via e-mail. Landeo's office assistant told Racine that the file had been sent to him, but it had not. On May 21, 2013, in response to an e-mail from Racine, Landeo e-mailed Racine to state that the documents in Castillo's file would be scanned and sent to his office. Racine waited until June 13, 2013, but Landeo did not send the documents in Castillo's file or provide a refund to Castillo and Keener; as such, Racine filed a complaint with the Commission against Landeo. As of August 6, 2013, Racine had not received Castillo's file, and Castillo and Keener had not received a refund.

*The Flores Matter*

In July 2002, Flores, a native and citizen of El Salvador, entered the United States illegally. Flores speaks English, but prefers communicating in Spanish.

On October 1, 2010, Flores met with Landeo and retained Landeo to file two documents on her behalf. The first document—Form I-360, or an "Abused Spouse Petition"—is a petition filed by an immigrant who is protected under the Violence Against Women Act, if he or she is married to a United States citizen and is a victim of domestic violence.[9] The second document—Form I-485, or an "Adjustment of Status"—would, if approved, allow Flores to get a green card for work authorization.[10]

In the retainer agreement, Flores agreed to pay Landeo $2,500 in attorney's fees, plus a $1,170 filing fee.[11] As of June 1, 2011, Flores had paid Landeo $2,500. On August 30, 2012, Flores paid the filing fee. Landeo never placed the fees in an attorney trust account.

As of June 27, 2011, Flores had provided Landeo with all of the documents that were necessary to file the Abused Spouse Petition, and Flores had signed the Abused Spouse Petition; thus, as of that date, the Abused Spouse Petition was ready for filing. Landeo, however, did not file the Abused Spouse Petition until nearly three months later,

---

[9]According to USCIS, the Violence Against Women Act applies to both men and women, and permits certain spouses of United States citizens "to file a [visa] petition for themselves, without the abuser's knowledge. This allows victims to seek both safety and independence from their abuser, who is not notified about the filing." U.S. Citizenship and Immigration Services, "Battered Spouse, Children & Parents," http://www.uscis.gov/humanitarian/battered-spouse-children-parents [http://perma.cc/4X 9D-MRQ8].

[10]Form I-485 is the form used by an immigrant "[t]o apply to adjust [his or her] status to that of a permanent resident of the United States." U.S. Citizenship and Immigration Services, "I-485, Application to Register Permanent Residence or Adjust Status," http://www.uscis.gov/i-485 [http://perma.cc/3SQS-P57N].

[11]The actual filing fee was $1,070, but Landeo "routinely added $100 for 'direct costs.'"

on September 22, 2011.

At some point after the filing of the Abused Spouse Petition, Landeo's office forwarded to Flores letters in which USCIS stated that it had made "a *prima facie* determination" as to the Abused Spouse Petition. Between July 6, 2012 and October 1, 2012, Landeo mailed to Flores letters informing Flores that the "*prima facie* determination" as to her classification as an abused spouse of a United States citizen had been extended. Flores requested from Landeo an explanation of USCIS's *prima facie* determination as to the Abused Spouse Petition, but Landeo never provided Flores with an explanation.

In a letter dated July 6, 2012, Landeo recommended filing the Adjustment of Status before USCIS approved the Abused Spouse Petition; the retainer agreement, however, provided that the Adjustment of Status would be filed after USCIS approved the Abused Spouse Petition.[12] Although it was not possible to obtain a work permit while the Abused Spouse Petition was pending, in the July 6, 2012 letter, Landeo stated that Flores "may wish to proceed with filing [her A]djustment of [S]tatus application so that [she could] obtain work authorization while" the Abused Spouse petition was pending. In a letter dated July 10, 2012, Flores agreed to having the Adjustment of Status filed before USCIS approved the Abused Spouse Petition. Landeo, however, never explained the process to Flores.

As of September 27, 2012, Flores had provided Landeo with all of the documents

---

[12]At the hearing in this attorney discipline proceeding, Jay Marks, an expert in the field of immigration law, testified on the Commission's behalf that the Abused Spouse Petition and the Adjustment of Status may be filed together, but that the Adjustment of Status is considered only after the Abused Spouse Petition is approved.

that were necessary to file the Adjustment of Status. Landeo, however, never filed the Adjustment of Status.

On December 4 and 7, 2012, Flores telephoned Landeo's office asking for a status update. During the latter telephone call, a member of Landeo's staff told Flores that Landeo would telephone her when the Adjustment of Status was "ready for signature." On December 17, 2012, Flores visited Landeo's office to ask for a copy of her file. At some point between December 17 and 27, 2012, Flores terminated Landeo's representation and retained a new lawyer, Jonathan Bloom ("Bloom").

On December 27, 2012, Bloom mailed and faxed to Landeo a letter in which he requested Flores's file. On January 2, 2013, Landeo mailed to Bloom a letter in which she stated that would "scan and e[-]mail [Flores's] file before the end of the week." As of January 18, 2013, Bloom had not received anything else from Landeo; on that date, Bloom sent to Landeo a second letter in which he requested Flores's file. On January 24, 2013, a member of Landeo's staff e-mailed to Bloom scanned copies of Flores's file. In a letter dated February 7, 2013, Bloom reiterated his request for the originals of Flores's file and requested a refund of the $1,170 filing fee and $1,250 in unearned attorney's fees.[13] On February 22, 2013, Landeo mailed to Bloom Flores's file and a statement of account, according to which Flores owed Landeo $2,138.72. Landeo never refunded attorney's fees to Flores.

---

[13]In the letter, which the hearing judge admitted into evidence, Bloom requested the refund of $1,250 in unearned attorney's fees because Landeo had never filed the Adjustment of Status.

*The Martinez-Ramos Matter*

In 1997, Martinez-Ramos, a native and citizen of Honduras, entered the United States illegally. Martinez-Ramos does not read or write English, and, at all relevant times, communicated only in Spanish. On or about November 15, 1999, Martinez-Ramos was granted "Temporary Protective Status," which allows an immigrant from a country that is suffering from war or natural disaster to be protected from deportation, obtain work authorization, and obtain authorization to leave and return to the United States.

In 2009, without authorization from the United States government, Martinez-Ramos left the United States and returned to Honduras. Because Martinez-Ramos failed to get advance permission to leave and re-enter the United States, she was detained when she attempted to illegally re-enter the United States at the Texas border in 2010. On August 21, 2010, an order for Martinez-Ramos's removal and deportation was issued. Martinez-Ramos was released, however, on an "Order of Supervision," which provided her with a conditional grace period to remain in the United States. To avoid removal, Martinez-Ramos had to get her Temporary Protective Status reinstated; in December 2010, USCIS reinstated Martinez-Ramos's Temporary Protective Status.

In a letter dated June 14, 2012, USCIS informed Martinez-Ramos that it had withdrawn her Temporary Protective Status. In the letter, USCIS stated that Martinez-Ramos could appeal the decision withdrawing her Temporary Protective Status by filing a Form I-290B, or "Notice of Appeal or Motion," within thirty-three days of the date of the letter; USCIS stated: "If a motion or appeal is not filed within [thirty-three] days[,] this decision is final." Thus, the deadline for filing the Notice of Appeal or Motion was July

17, 2012.

On July 6, 2012, Martinez-Ramos met with Landeo, and communicated with Landeo through one of Landeo's part-time assistants, who acted as an interpreter. On that day, Martinez-Ramos retained Landeo to file a "Motion to Reopen/Reconsider Denied/Revoked" Temporary Protective Status on her behalf. Landeo charged Martinez-Ramos $1,600 in attorney's fees and $730 in filing fees and other costs. Landeo did not deposit the $730 in filing fees and other costs into an attorney trust account.

As of July 10, 2012, Landeo had completed a brief for the Notice of Appeal or Motion. On July 14, 2012, Landeo signed an attorney appearance form. Thus, the Notice of Appeal or Motion was ready for filing three days before the deadline. However, Landeo did not file the Notice of Appeal or Motion until more than three months later, on October 23, 2012. The Notice of Appeal or Motion did not provide any reasons for the late filing. Landeo never explained the late filing to Martinez-Ramos. On December 13, 2012, USCIS denied the untimely Notice of Appeal or Motion.

Meanwhile, on September 12, 2012, Martinez-Ramos retained Landeo to file a work permit application on her behalf. Landeo charged Martinez-Ramos $350 in attorney's fees and $565 in filing fees and other costs. Landeo never filed the work permit application. Landeo did not deposit the $565 in filing fees and other costs into an attorney trust account.

In September 2012, Martinez-Ramos met with her immigration officer. At the meeting, the immigration officer wrote something on a paper and gave it to Martinez-Ramos; the note was written in English, and Martinez-Ramos, who speaks and writes only in Spanish, was unable to understand the note. Accordingly, Martinez-Ramos went to

Landeo's office to ask for an explanation of the note, but Martinez-Ramos was unable to meet with Landeo to have the note explained to her.

On October 1, 2012, Martinez-Ramos visited Landeo's office to ask for copies of documents so that she could show her immigration officer that she was represented by a lawyer and that she had filed a Notice of Appeal or Motion. On October 12, 2012, during a telephonic conversation, a member of Landeo's staff told Martinez-Ramos that she could pick up the documents that day. As of that date, however, Landeo had not filed either the Notice of Appeal or Motion or the attorney appearance form.

On November 7, 2012, Martinez-Ramos visited Landeo's office to ask whether Landeo had heard anything about the Notice of Appeal or Motion, and to inform Landeo that she would be meeting with her immigration officer on November 26, 2012. On November 8, 2012, a member of Landeo's staff informed Martinez-Ramos that Landeo's office had not heard anything about the Notice of Appeal or Motion, and that, if Landeo's office had still not heard anything by November 26, 2012, Landeo would telephone Martinez-Ramos's immigration officer. Landeo failed to telephone Martinez-Ramos's immigration officer by November 26, 2012. On November 26, 2012, during her meeting with her immigration officer, Marinez-Ramos was detained for purposes of deportation. Between July 6, 2012, when Martinez-Ramos first retained Landeo, and November 26, 2012, when Martinez-Ramos was detained for purposes of deportation, Martinez-Ramos had no direct contact with Landeo. On November 28, 2012, in an e-mail, Landeo wrote

that she had spoken with Martinez-Ramos's immigration officer.[14]

On November 27, 2012, one day after Martinez-Ramos had been detained for purposes of deportation, Martinez-Ramos's sister, Marcia Vasquez ("Vasquez"), and Vasquez's husband, Isaac Vasquez ("Isaac"), sought to retain Landeo for "initial evaluation, review[,] and legal advice" concerning Martinez-Ramos's detainment. On that day, Landeo signed an attorney appearance form for an "alien detained." Three days later, Vasquez and Isaac went to Landeo's office to find out what Landeo had learned; at that time, a member of Landeo's staff advised Vasquez and Isaac that Landeo was unavailable and that it would cost $250 to set up an appointment with Landeo. At that point, Vasquez requested the documents in Martinez-Ramos's file, but Landeo's office was unable to provide the documents and stated that Vasquez would need to wait five business days.

On December 5, 2012, Vasquez retained Landeo to file a Form I-246, or a "Motion to Stay Removal," on Martinez-Ramos's behalf. Landeo charged Vasquez $600, which Vasquez paid on that date. On December 7, 2012, Landeo mailed the Motion to Stay Removal to the United States Immigration and Customs Enforcement ("ICE").[15] On December 10, 2012, ICE informed Landeo that, per the instructions on Form I-246, the Motion to Stay Removal needed to be hand-delivered to the ICE office in Baltimore. On

---

[14]In the e-mail, which the hearing judge admitted into evidence, Landeo appears to update a member of her staff concerning Martinez-Ramos's situation and, specifically, that she spoke with Martinez-Ramos's immigration officer. Indeed, in the opening sentence of the e-mail, Landeo wrote: "Here is what we have for now . . . so at least [yo]u can give them an update and tell them where we are."

[15]ICE deports illegal immigrants. See U.S. Immigration and Customs Enforcement, "Who We Are," http://www.ice.gov/about [http://perma.cc/P5QG-CFYB].

that day, Landeo telephoned Vasquez, told her what ICE had stated, and said that she could travel to Baltimore for another $600. Vasquez told Landeo to "definitely go" to Baltimore, and provided her credit card information to pay the additional $600.

Ultimately, Landeo's office could not process Vasquez's credit card information. On December 11, 2012, Landeo's assistant telephoned Vasquez about Landeo's office's inability to process Vasquez's credit card, and stated that to go to Baltimore Landeo needed the money to be paid. Vasquez decided not to pay Landeo another $600 because she believed that Landeo had done nothing since being retained. On that date, Vasquez went to Landeo's office to retrieve the documents from Martinez-Ramos's file.

On December 14, 2012, Martinez-Ramos was deported.

*Aggravating Factors and Mitigating Factors*

The hearing judge found three aggravating factors: (1) "a pattern of misconduct"; (2) "multiple violations of the" MLRPC; and (3) a refusal "to acknowledge the wrongfulness of [Landeo's] misconduct[.]" The hearing judge found at least one mitigating factor: "no prior [attorney] disciplinary offenses."

Without expressly crediting the evidence, the hearing judge discussed evidence of mitigating factors that Landeo had offered. According to the hearing judge, Landeo testified as follows. As of 2007, Landeo had two sons. In August 2007, Landeo married her current husband, with whom she has had two more children. Landeo's husband was physically abusive to her and her children. At least two of Landeo's children had either physical or developmental issues, such as attention deficit hyperactivity disorder and

- 15 -

pyloric stenosis.[16]  In early 2014, Landeo separated from her husband.

Landeo suffers from chronic severe anemia, which causes fatigue, mental cloudiness, and an inability to function.  Landeo also suffers from depression and anxiety, but denied that her mental health affected her ability to represent her clients.

On July 30, 2015—*i.e.*, four days before the hearing in this attorney discipline proceeding began—Landeo mailed to Flores a check for $1,170, and mailed to Vasquez a check for $840.  Landeo intended the checks to be refunds of filing fees.

As a result of this attorney discipline proceeding, Landeo "sets available dates for clients to meet with her for questions[.]"  However, Landeo's retainer agreement still states that if requested by the client a meeting with her after the initial meeting costs $250. Landeo and her law partner are in the "process" of creating a Spanish version of her retainer agreement, but, as of the hearing in this attorney discipline proceeding, they had not completed the Spanish version of the retainer agreement.  Landeo no longer charges large retainers up front, and instead charges small monthly payments; Landeo puts only earned fees into her operating account, and puts unearned fees in trust.[17]  Landeo will no longer have a part-time assistant, but instead will have a full-time assistant who will contact Landeo with important messages or if a client is upset or concerned.

---

[16]"Pyloric stenosis is an uncommon condition in infants that blocks food from entering the small intestine."  Mayo Clinic, "Pyloric stenosis," http://www.mayoclinic.org/diseases-conditions/pyloric-stenosis/home/ovc-20163855 [http://perma.cc/TT6T-JKSU].

[17]The changes in Landeo's office's financial accounting practices occurred as a result of Landeo's partner's response to a complaint that was filed with the Commission. In July 2015, Landeo's partner entered into a conditional diversion agreement with Bar Counsel, pursuant to which a certified public accountant is to periodically review Landeo's office's bank accounts.

According to Landeo's counsel, any delays that occurred during Landeo's representation of Castillo, Flores, and Martinez-Ramos were because Landeo was either away from the office or sick with the flu, which became pneumonia in January 2013.

**STANDARD OF REVIEW**

In an attorney discipline proceeding, this Court reviews for clear error a hearing judge's findings of fact, and reviews without deference a hearing judge's conclusions of law. See Md. R. 16-759(b)(2)(B) ("The Court [of Appeals] shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."); Attorney Grievance Comm'n v. Shuler, 443 Md. 494, 501, 117 A.3d 38, 43 (2015) ("[T]his Court reviews for clear error a hearing judge's findings of fact[.]" (Citations omitted)); Md. R. 16-759(b)(1) ("The Court of Appeals shall review de novo the [hearing] judge's conclusions of law."). This Court determines whether clear and convincing evidence establishes that a lawyer violated an MLRPC. See Md. R. 16-757(b) ("The [Commission] has the burden of proving the averments of the petition [for disciplinary or remedial action] by clear and convincing evidence.").

**DISCUSSION**

**(A) Findings of Fact**

The Commission excepts to the hearing judge's finding that Keener agreed to pay a "total fee [of] $3[,]800 plus a $520 filing fee" for the Immediate Family Petition. (Footnote omitted). The Commission contends that, according to the retainer agreement, the $3,800 in attorney's fees was for not only the Immediate Family Petition, but also the Waiver of Unlawful Presence and the forms for consular processing. We agree and sustain the

- 17 -

Commission's exception. The retainer agreement that Castillo and Keener signed stated at the outset that the "nature of [the] case" was "Spouse Petition [*i.e.*, the Immediate Family Petition], [and] Waiver for Unlawful Presence with Consular Processing[.]" (Some capitalization omitted). Under the heading "What Your Anticipated Attorney['s] Fee Include[s]," the retainer agreement provided: "Your attorney['s] fee indicated herein is presented as an anticipated flat fee based on the estimated billable time that it will take to complete your case. Your fee of $3[,]800 includes up to [eleven] hours of case-related work, which should be sufficient to include an interview by USCIS, if scheduled." (Bolding, underlining, and some capitalization omitted). Under the heading "Costs and Fees," the retainer agreement provided that the anticipated attorney's fees for "Spousal Petition, Waiver for Unlawful Presence with Consular Processing" were $3,800. (Bolding and some capitalization omitted). The retainer agreement did not delineate the separate costs for the preparation of the Immediate Family Petition, Waiver of Unlawful Presence, and the forms for consular processing, but instead lumped the items together and stated that the anticipated attorney's fees for all of the items were $3,800. In other words, the retainer agreement did not state that the attorney's fees for just the Immediate Family Petition were $3,800, as the hearing judge found. Accordingly, we sustain the Commission's exception.

Landeo excepts to several of the hearing judge's findings of fact. In support of her exceptions, Landeo relies on her own testimony at the hearing in this attorney discipline proceeding. Landeo also relies on her "file," which her office maintained. At oral argument, Landeo's counsel acknowledged that Landeo's exceptions to the hearing judge's

- 18 -

findings of fact concerned the hearing judge's credibility determinations and discrediting of parts of Landeo's testimony, but nevertheless urged this Court to "re-weigh" the evidence presented to the hearing judge.

We overrule Landeo's exceptions to the hearing judge's findings of fact. In an attorney discipline proceeding, it is the role of the hearing judge to credit or discredit evidence, including testimony, and resolve conflicting versions of events. See Attorney Grievance Comm'n v. Marcalus, 414 Md. 501, 512, 996 A.2d 350, 356 (2010) ("[W]eighing the credibility of witnesses and resolving any conflict in the evidence are tasks proper for the fact finder . . . . [T]he hearing judge may pick and choose which evidence to rely upon[.]" (Citations and internal quotation marks omitted)). As such, we must "give due regard to the opportunity of the hearing judge to assess the credibility of witnesses." Md. R. 16-759(b)(2)(B). Here, in finding facts as he did, the hearing judge discredited parts of Landeo's testimony and the exhibits that she offered. We decline to second-guess the hearing judge's determinations of credibility; the hearing judge did not clearly err in making the findings of fact to which Landeo excepts.

### (B) Conclusions of Law

Before addressing the hearing judge's conclusions of law, for clarity and ease of reference, we set forth the below table outlining the Commission's charges (reflected in italics) and the hearing judge's conclusions of law as to each matter.

| MLRPC | The Castillo Matter | The Flores Matter | The Martinez-Ramos Matter |
|---|---|---|---|
| **1.1 (Competence)** | *Not charged* | *Charged* Charge withdrawn | *Charged* Violated |
| **1.3 (Diligence)** | *Charged* Violated | *Charged* Violated | *Charged* Violated |
| **1.4 (Communication)** | *Charged* 1.4 violated but no subsection specified | *Charged* 1.4 violated but no subsection specified | *Charged* 1.4 violated but no subsection specified |
| **1.5(a) (Reasonable Fees)** | *Charged* Not violated | *Charged* Not violated | *Charged* Not violated |
| **1.15(a), (c), and (d) (Safekeeping Property)** | *Charged* 1.15 violated but no subsection specified | *Charged* 1.15 violated but no subsection specified | *Charged* No conclusion of law made |
| **1.16(d) (Terminating Representation)** | *Charged* Violated | *Charged* Violated | *Charged* Not violated |
| **5.3(a), (b), and (c) (Responsibilities Regarding Nonlawyer Assistants)** | *Not charged* | *Charged* Not violated | *Charged* Not violated |
| **8.4(a) (Violating the MLRPC)** | *Charged* 8.4 violated but no subsection specified | *Not charged* | *Charged* 8.4 violated but no subsection specified |
| **8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation)** | *Charged* 8.4 violated but no subsection specified | *Not charged* | *Charged* 8.4 violated but no subsection specified |
| **8.4(d) (Conduct That is Prejudicial to the Administration of Justice)** | *Charged* 8.4 violated but no subsection specified | *Charged* 8.4 violated but no subsection specified | *Charged* 8.4 violated but no subsection specified |

The Commission excepts to the hearing judge's conclusion that Landeo did not violate MLRPC 1.5(a) (Reasonable Fees) in representing Castillo. The Commission also excepts to the hearing judge's failure to conclude that Landeo violated MLRPC 1.15 (Safekeeping Property) in representing Martinez-Ramos.

Without referencing MLRPC 1.4, Landeo excepts to the hearing judge's conclusion that she "failed to reasonably communicate with [] Keener and Castillo[.]" (Bolding and some capitalization omitted). Landeo excepts to the hearing judge's conclusion that she violated MLRPC 1.15 in representing Castillo. Without referencing MLRPC 1.16(d), Landeo excepts to the hearing judge's conclusion that she "failed to timely forward [Castillo's] file" Racine, her new lawyer (Bolding and capitalization omitted).

Without referencing MLRPC 1.3, Landeo excepts to the hearing judge's conclusion that she "did not act with diligence to file [Flores's] spousal abuse petition" and that "she did not act with diligence to file [Flores's] adjustment of status petition[.]" (Bolding and capitalization omitted). Without referencing MLRPC 1.4, Landeo excepts to the hearing judge's conclusion that she "failed to adequately communicate with Flores[.]" (Bolding and some capitalization omitted). Without referencing MLRPC 1.16(d), Landeo appears to except to the hearing judge's conclusion that she violated MLRPC 1.16(d) by stating that she "adequately transferred the file to Flores'[s] new counsel[.]" (Bolding and some capitalization omitted).

Without referencing MLRPC 1.3, Landeo excepts to the hearing judge's conclusion that she "failed to act diligently by failing to perform services [that she] was not hired to perform" in the Martinez-Ramos matter. (Bolding and capitalization omitted). Without referencing MLRPC 1.4, Landeo excepts to the hearing judge's conclusion that she "did not adequately communicate with" Martinez-Ramos. (Bolding and capitalization

omitted).[18]

Significantly, many of Landeo's exceptions to the hearing judge's conclusions of law rest on exceptions to the hearing judge's findings of fact, which, in turn, involve the hearing judge's determinations of credibility. As discussed above, we overrule Landeo's exceptions to the hearing judge's findings of fact. Accordingly, to the extent that Landeo's exceptions to the hearing judge's conclusions of law rely on her exceptions to the hearing judge's findings of fact, we overrule Landeo's exceptions to the hearing judge's conclusions of law.

For the below reasons, we: (1) sustain the Commission's exception to the hearing judge's conclusion that Landeo did not violate MLRPC 1.5(a) in representing Castillo; (2) sustain the Commission's exception to the hearing judge's failure to conclude that Landeo violated MLRPC 1.15(a) in representing Martinez-Ramos; (3) overrule all of Landeo's exceptions to the hearing judge's conclusions of law; (4) reverse the hearing judge's conclusions that Landeo did not violate MLRPC 1.5(a) in representing Flores and Martinez-Ramos; and (5) uphold the rest of the hearing judge's conclusions of law.

**MLRPC 1.1 (Competence)**

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness[,] and preparation

---

[18]Notably, aside from Landeo's exception to the hearing judge's conclusion that she violated MLRPC 1.15 in the Castillo matter, Landeo fails to expressly identify any other MLRPC in her exceptions. In other words, most of Landeo's exceptions to the hearing judge's conclusions of law are implied without reference to the MLRPC at issue or pertinent case law. As such, we have inferred through context the hearing judge's conclusions of law to which Landeo excepts.

reasonably necessary for the representation." MLRPC 1.1.

Here, clear and convincing evidence supports the hearing judge's conclusion that Landeo violated MLRPC 1.1 in representing Martinez-Ramos. The Notice of Appeal or Motion was ready for filing three days before the deadline. However, Landeo did not file the Notice of Appeal or Motion until more than three months after the deadline, and the Notice of Appeal or Motion did not provide any reasons for the late filing. As a result, USCIS denied the untimely Notice of Appeal or Motion. Additionally, Landeo mailed the Motion to Stay Removal to ICE despite the fact that, per the instructions on the form, the Motion to Stay Removal needed to be hand-delivered to the ICE office in Baltimore. Landeo did not correct the mistake of having mailed the Motion to Stay Removal, and instead insisted on additional payment from Vasquez to hand-deliver the Motion to Stay Removal.

## MLRPC 1.3 (Diligence)

As mentioned above, Landeo excepts to the hearing judge's conclusions that she violated MLRPC 1.3 in representing Flores and Martinez-Ramos. We overrule the exceptions.

"A lawyer shall act with reasonable diligence and promptness in representing a client." MLRPC 1.3.

Here, clear and convincing evidence supports the hearing judge's conclusion that Landeo violated MLRPC 1.3 in representing Castillo. As of July 2012, Castillo and Keener had provided Landeo the filing fee and all of the documents that were necessary to file the Immediate Family Petition. On July 30, 2012, Landeo signed an attorney appearance form.

Landeo, however, did not file the Immediate Family Petition with USCIS until nearly eight months later, on March 28, 2013. In the interim, on January 3, 2013, the Department of Homeland Security published the amendment to the regulation regarding waiver of unlawful presence. The amendment in no way affected the form or substance of Immediate Family Petitions. Even if waiting for the amendment to be published were a valid reason for delaying in filing the Immediate Family Petition and attorney appearance form, Landeo still delayed nearly three months after the amendment was published.[19]

Clear and convincing evidence also supports the hearing judge's conclusion that Landeo violated MLRPC 1.3 in representing Flores. Flores provided Landeo with all of the documents that were necessary to file the Abused Spouse Petition, and Flores signed the Abused Spouse Petition. Landeo, however, did not file the Abused Spouse Petition until nearly three months later. Additionally, Flores provided Landeo with all of the documents that were necessary to file the Adjustment of Status. Landeo, however, never filed the Adjustment of Status.

Clear and convincing evidence also supports the hearing judge's conclusion that Landeo violated MLRPC 1.3 in representing Martinez-Ramos. The Notice of Appeal or Motion was ready for filing three days before the deadline. However, Landeo did not file

---

[19]To be sure, the amendment to the regulation became effective on March 4, 2013. Nonetheless, even using this date as a measure, Landeo delayed more than three weeks after the amendment became effective before filing the Immediate Family Petition and attorney appearance form with USCIS, despite the circumstance that, as of July 30, 2012, Landeo had been provided the filing fee and necessary documentation for the Immediate Family Petition, and Landeo had signed the attorney appearance form. And, in any event, Landeo failed to adequately convey, either herself or through her staff, to either Castillo or Keener that she planned to wait to file the Immediate Family Petition.

the Notice of Appeal or Motion until more than three months later. Additionally, Martinez-Ramos retained Landeo to file a work permit application on her behalf, but Landeo never filed the work permit application.

## MLRPC 1.4 (Communication)

Landeo excepts to the hearing judge's conclusions that she violated MLRPC 1.4 in representing Castillo, Flores, and Martinez-Ramos. We overrule the exceptions.

MLRPC 1.4 provides, in pertinent part:

(a) A lawyer shall: . . . (2) keep the client reasonably informed about the status of the matter; [and] (3) promptly comply with reasonable requests for information[.]

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

(Paragraph breaks omitted). Comment [5] to MLRPC 1.4 explains that "[t]he client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued . . . . Adequacy of communication depends in part on the kind of advice or assistance that is involved."

Here, clear and convincing evidence supports the hearing judge's conclusion that Landeo violated MLRPC 1.4 in representing Castillo. Between May 2012 and March 2013, Landeo never directly communicated with Castillo or Keener, despite Castillo's multiple attempts to speak with Landeo. Between May 2012 and March 2013, Castillo telephoned Landeo's office at least fifteen times requesting status updates and information as to the filing of the Immediate Family Petition. Castillo requested that Landeo call her

back, but Landeo failed to do so. Keener also attempted to speak with Landeo by telephone. Whenever Castillo and Keener telephoned Landeo's office to speak with Landeo, a member of the firm's staff told them that Landeo was "unavailable." On multiple occasions, Castillo asked for a receipt number so that she could check the Immediate Family Petition's status on USCIS's website, and a member of the firm's staff told Castillo that Landeo was unavailable and that the staff member was not in a position to provide the receipt number. Landeo never explained to Castillo or Keener why she delayed in filing the Immediate Family Petition. In sum, Landeo violated MLRPC 1.4(a)(2), 1.4(a)(3), and 1.4(b) by: failing to keep Castillo and Keener reasonably informed about the status of the case generally and the Immediate Family Petition specifically; failing to promptly comply with Castillo's and Keener's reasonable requests for information; and failing to explain the matter to the extent reasonably necessary to permit Castillo and Keener to make informed decisions regarding the representation.

Clear and convincing evidence also supports the hearing judge's conclusion that Landeo violated MLRPC 1.4 in representing Flores. After the filing of the Abused Spouse Petition on September 22, 2011, Landeo's office forwarded to Flores letters in which USCIS stated that it had made "a *prima facie* determination" as to the Abused Spouse Petition. Between July 6, 2012 and October 1, 2012, Landeo mailed to Flores letters informing Flores that the "*prima facie* determination" as to her classification as an abused spouse of a United States citizen had been extended. Flores requested from Landeo an explanation of USCIS's *prima facie* determination as to the Abused Spouse Petition, but Landeo never explained the matter to Flores. In a letter dated July 6, 2012, Landeo

recommended filing the Adjustment of Status before USCIS approved the Abused Spouse Petition. In a letter dated July 10, 2012, Flores agreed to having the Adjustment of Status filed before USCIS approved the Abused Spouse Petition. However, Landeo never explained the process to Flores. Landeo violated MLRPC 1.4(a)(2), 1.4(a)(3), and 1.4(b) in representing Flores by: failing to keep Flores reasonably informed about the status of the matter; failing to promptly comply with Flores's reasonable requests for information; and failing to explain the matter to the extent reasonably necessary to permit Flores to make informed decisions regarding the representation.

Clear and convincing evidence also supports the hearing judge's conclusion that Landeo violated MLRPC 1.4 in representing Martinez-Ramos. Landeo did not file the Notice of Appeal or Motion until more than three months after the deadline, and she never explained the late filing to Martinez-Ramos. Landeo violated MLRPC 1.4(a)(2) and 1.4(b) in representing Martinez-Ramos by: failing to keep Martinez-Ramos reasonably informed about the status of the matter; and failing to explain the matter to the extent reasonably necessary to permit Martinez-Ramos to make informed decisions regarding the representation.

**MLRPC 1.5(a) (Reasonable Fees)**

As stated above, the Commission excepts to the hearing judge's conclusion that Landeo did not violate MLRPC 1.5(a) in representing Castillo. We sustain the exception, and also reverse the hearing judge's conclusions that Landeo did not violate MLRPC 1.5(a) in representing Flores and Martinez-Ramos.

"A lawyer shall not make an agreement for, charge, or collect an unreasonable

fee[.]" MLRPC 1.5(a). "Although a fee for certain services may not be unreasonable on its face, the fee is unreasonable if the lawyer fails to perform the services to any meaningful degree." Attorney Grievance Comm'n v. Thomas, 445 Md. 379, 393, 127 A.3d 562, 570 (2015) (citation and internal quotation marks omitted); see also Attorney Grievance Comm'n v. Garrett, 427 Md. 209, 224, 46 A.3d 1169, 1178 (2012) (per curiam) ("The reasonableness of a fee is not measured solely by examining its value at the outset of the representation; indeed[,] an otherwise-reasonable fee can become unreasonable if the lawyer fails to earn it." (Citations omitted).).

Clear and convincing evidence persuades us to reverse the hearing judge's conclusion that Landeo did not violate MLRPC 1.5(a) in representing Castillo on the ground that "the [hearing judge could not] find that charging of $3[,]000 for the preparation of the [Immediate Family Petition was] an unreasonable fee." The hearing judge's conclusion appears to be based, at least in part, on his finding that Keener agreed to pay a "total fee [of] $3[,]800 plus a $520 filing fee" for the Immediate Family Petition. (Footnote omitted). As discussed above, the hearing judge's finding was clearly erroneous because Keener and Castillo agreed to pay $3,800 in attorney's fees for not only the Immediate Family Petition, but also the Waiver of Unlawful Presence and the forms for consular processing. Keener ended up paying Landeo a total $3,000 in attorney's fees and the $520 filing fee. Although Landeo filed the Immediate Family Petition after Keener telephoned Landeo's office and stated that he would stop paying fees until Landeo provided a receipt for the filing of the Immediate Family Petition, Landeo never filed the Waiver of Unlawful Presence or the forms for consular processing. After Keener and Castillo terminated

- 28 -

Landeo's representation, Landeo sent them a bill for $4,205. Keener's and Castillo's new lawyer requested a refund of unearned fees. However, Landeo never provided Keener and Castillo with a refund. In essence, although Keener and Castillo paid nearly eighty percent of the agreed upon attorney's fees, Landeo only partially performed the services for which she was retained. In other words, Landeo failed to perform the services concerning the Waiver of Unlawful Presence and the forms for consular processing to any meaningful degree, despite the receipt of nearly eighty percent of the total attorney's fees.

Additionally, a review of Landeo's final bill to Keener and Castillo reveals that Landeo charged for items such as "Prepare/Send Payment Reminder" and "Payment by phone Rec'd and Receipt processed," as well as for telephone calls from Keener and Castillo that were handled by someone other than Landeo, at a rate of $15 to $30 per telephone call, and that were necessitated by Landeo's lack of communication with Keener and Castillo. Notably, the retainer agreement that Keener and Castillo signed did not state that Landeo would charge them for accounting services, such as the processing of payments and the sending payment reminders, or contain any express statement that they would be charged for routine telephone calls in which they requested a status update and were unable to speak with Landeo.[20] We conclude that charging fees for these items was unreasonable

___

[20]By contrast, the retainer agreement stated that the anticipated fee did not include any mail services more than $5 per envelope or package or "any long distance, collect, or out of country calls[,]" and that the client would "be billed separately for any such services." In other words, telephone calls that Landeo would need to make during the course of the representation that were long distance, collect, or out of country would be billed separately to Keener and Castillo.

under the circumstances of this case, where Keener and Castillo did not consent to the charges for accounting services and routine telephone calls to Landeo's office and where no extenuating circumstances warranted the imposition of separate fees for those items. Cf. Attorney Grievance Comm'n v. Kreamer, 404 Md. 282, 340, 339, 946 A.2d 500, 534 (2008) (We held that a lawyer violated MLRPC 1.5(a) by charging for accounting services—time that the lawyer spent completing time sheets—absent advance disclosure and consent from her clients or extenuating circumstances justifying the separate charge; we stated that "the ordinary and usual costs of operating a law office—rent, utilities, accounting and administrative services and the like—should not be individually billed to the client, in additional to the charge for legal representation, absent some other extenuating circumstances[.]").

Clear and convincing evidence persuades us to reverse the hearing judge's conclusion that Landeo did not violate MLRPC 1.5(a) in representing Flores. Flores provided Landeo with all of the documents that were necessary to file the Adjustment of Status. Landeo, however, never filed the Adjustment of Status. In other words, Landeo charged Flores for a service that Landeo failed to provide. Thus, even if Landeo's fee were reasonable on its face, Landeo's fee became unreasonable when she failed to provide

---

The retainer agreement also provided that, should the client's case be terminated for nonpayment of fees, the client would "be billed for all administrative fees, including but not limited to postage fees, copy fees, mileage fees, or any other fees incurred in [the] case." That section of the retainer is inapplicable here because Landeo did not terminate Castillo's case for nonpayment of fees. And, in any event, even if applicable, that clause of the retainer agreement does not provide for the separate billing of accounting services or telephone calls from the client.

services for which she was retained and paid. Significantly, the Adjustment of Status, if filed and approved, would have provided the relief that Flores sought when she retained Landeo—a green card for work authorization. Although, a few days before the hearing in this attorney discipline proceeding began, Landeo mailed to Flores a check for $1,170 as a refund of filing fees, Landeo never refunded attorney's fees to Flores.

Clear and convincing evidence persuades us to reverse the hearing judge's conclusion that Landeo did not violate MLRPC 1.5(a) in representing Martinez-Ramos. Landeo failed to timely file the Notice of Appeal or Motion and to provide reasons for the late filing. USCIS denied the untimely Notice of Appeal or Motion, and Martinez-Ramos was detained and deported. Additionally, although Martinez-Ramos retained Landeo to file a work permit application on her behalf and paid Landeo attorney's fees and filing fees to do so, Landeo never filed the work permit application. Because Landeo charged Martinez-Ramos for services that she failed to provide—namely, timely filing the Notice of Appeal or Motion and filing a work permit application—Landeo's fee was unreasonable. As with Flores, a few days before the hearing in this attorney discipline proceeding began, Landeo mailed to Vasquez a check for $840 as a refund of filing fees;[21] however, Landeo never refunded attorney's fees to Martinez-Ramos or Vasquez.

---

[21]The hearing judge found that Landeo charged Martinez-Ramos $730 in filing fees and other costs for the Notice of Appeal or Motion and $565 in filing fees and other costs for the work permit application. These filing fees and other costs total $1,295, which is $455 more than what Landeo refunded to Vasquez.

**MLRPC 1.15(a), (c), and (d) (Safekeeping Property)**

As stated above, the Commission excepts to the hearing judge's failure to conclude that Landeo violated MLRPC 1.15 in representing Martinez-Ramos, and Landeo excepts to the hearing judge's conclusion that she violated MLRPC 1.15 in representing Castillo.[22] We sustain the Commission's exception and overrule Landeo's exception.

MLRPC 1.15(a) provides:

> A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

"MLRPC 1.15(a) requires an attorney to maintain client funds in a trust account, separate from the attorney's personal and operating funds. . . . [A lawyer]'s failure to maintain his [or her] trust account separately from his [or her] personal funds [is a violation of] MLRPC 1.15(a)." Attorney Grievance Comm'n v. Moeller, 427 Md. 66, 73, 46 A.3d 407, 411 (2012) (citations omitted).

MLRPC 1.15(c) provides:

> Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

---

[22]Landeo does not except to the hearing judge's conclusion that she violated MLRPC 1.15 in representing Flores.

Thus, "fee payments, even if a flat fee [is charged], must be placed in escrow upon receipt if the work has not yet been performed at the time of payment." Attorney Grievance Comm'n v. Khandpur, 421 Md. 1, 16, 25 A.3d 165, 174 (2011) (citation omitted).

MLRPC 1.15(d) provides:

Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

A lawyer violates MLRPC 1.15(d) by, for example, "fail[ing] to promptly deliver settlement funds to [a] client and to medical providers[,]" and by failing to "pay a client's debt from settlement funds[.]" Attorney Grievance Comm'n v. Roberts, 394 Md. 137, 163-64, 904 A.2d 557, 573 (2006).

Here, without specifying a subsection, the hearing judge concluded that Landeo had violated MLRPC 1.15 in representing Castillo because Landeo had "admitted that none of the attorney['s] fees received or USCIS filing fees were held in a trust account[.]" Also, without specifying a subsection, the hearing judge concluded that Landeo had violated MLRPC 1.15 in representing Flores because Landeo "failed to place unearned attorney's fees and filing fees in a trust account." The hearing judge failed to make a conclusion as to whether Landeo had violated MLRPC 1.15 in representing Martinez-Ramos. Although Landeo excepted to the hearing judge's conclusion that she violated MLRPC 1.15 in representing Castillo, at oral argument, Landeo's counsel acknowledged that "no money was placed in a trust account[,]" including attorney's fees and filing fees; that such a

- 33 -

practice was a problem under the MLRPC; and that the fees should have been deposited into an attorney trust account.

In any event, clear and convincing evidence supports a conclusion that Landeo violated MLRPC 1.15(a) in representing Castillo, Flores, and Martinez-Ramos. The hearing judge found, and Landeo's counsel acknowledged at oral argument, that no funds—attorney's fees or filing fees—were placed into an attorney trust account. Indeed, the failure to place any funds received from clients into an attorney trust account is a textbook violation of MLRPC 1.15(a).

Clear and convincing evidence also supports the conclusion that Landeo also violated MLRPC 1.15(c) in representing Castillo. At the initial consultation, Keener paid Landeo $600 in attorney's fees, prior to any work (other than the initial consultation) being performed in the case. Despite not having obtained Castillo's or Keener's informed consent, confirmed in writing, to a different arrangement, Landeo failed to deposit Keener's unearned attorney's fees in an attorney trust account. Such conduct violated MLRPC 1.15(c).

Clear and convincing evidence also supports the conclusion that Landeo also violated MLRPC 1.15(c) in representing Flores. Flores agreed to pay $2,500 in attorney's fees for the preparation and filing of an Abused Spouse Petition and Adjustment of Status. As of June 1, 2011, Flores had paid Landeo $2,500 in attorney's fees, but Landeo never placed the fees in an attorney trust account. As of the date that Flores paid the attorney's fees in full, neither the Abused Spouse Petition nor Adjustment of Status had been prepared or filed. In other words, despite not having Flores's informed consent, confirmed in

- 34 -

writing, to a different arrangement, Landeo deposited Flores's unearned attorney's fees

into an account other than an attorney trust account.[23]  Such conduct violated MLRPC

1.15(c).[24]

### MLRPC 1.16(d) (Terminating Representation)

Landeo excepts to the hearing judge's conclusions that she violated MLRPC 1.16(d)

in representing Castillo and Flores.  We overrule the exceptions.

MLRPC 1.16(d) provides, in pertinent part:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled[,] and refunding any advance payment of fee or expense that has not been earned or incurred.

"When a client requests his or her file from an attorney at the end of the representation,

MLRPC 1.16(d) requires the attorney to surrender the portions of the file (or a copy) to

---

[23]We observe that nothing in the hearing judge's findings of fact indicate that any of the three clients gave informed consent, confirmed in writing, for Landeo to place unearned fees into an account other than an attorney trust account.

Moreover, the hearing judge made specific findings of fact that unearned attorney's fees in the Castillo matter and the Flores matter were not placed in an attorney trust account. The hearing judge did not make similar findings of fact in the Martinez-Ramos matter—*i.e.*, that unearned attorney's fees were not placed in an attorney trust account. Although, ostensibly, attorney's fees that were paid to Landeo in the Martinez-Ramos matter were unearned at the time they were paid and yet not placed in an attorney trust account, absent specific findings by the hearing judge that such fees were unearned, we decline to conclude that clear and convincing evidence supports a conclusion that Landeo violated MLRPC 1.15(c) in representing Martinez-Ramos.

[24]Nothing in the hearing judge's findings of fact gives rise to the conclusion that Landeo violated MLRPC 1.15(d) in representing Castillo, Flores, or Martinez-Ramos, *i.e.*, that Landeo received funds or other property in which her clients or third persons had an interest and then failed to promptly deliver those funds.  Accordingly, clear and convincing evidence would not support a conclusion that Landeo violated MLRPC 1.15(d).

- 35 -

which the client is entitled (assuming no proper charging lien exists)." <u>Attorney Grievance Comm'n v. Brown</u>, 426 Md. 298, 322, 44 A.3d 344, 359 (2012) (citations omitted).

Here, clear and convincing evidence supports the hearing judge's conclusion that Landeo violated MLRPC 1.16(d) in representing Castillo. As of April 4, 2015, Keener had informed Landeo's office that he and Castillo were terminating Landeo's representation. On April 5, 2013, Castillo and Keener retained a new immigration lawyer, Racine. On that day, Racine sent to Landeo a request for Castillo's file; Landeo received the request on April 8, 2013. In addition to sending the letter, Racine telephoned Landeo's office to facilitate the transfer of Castillo's file. Landeo's office assistant told Racine that the file had been sent to him, but it had not. On May 21, 2013, in response to an e-mail from Racine, Landeo e-mailed Racine to state that the documents in Castillo's would be scanned and sent to his office. Racine waited until June 13, 2013, but Landeo did not send the documents in Castillo's file. As of August 6, 2013, Racine still had not received Castillo's file. In other words, despite having been advised by Landeo's office assistant and by Landeo that Castillo's file had been, or would be, sent to him, Racine still had not received Castillo's file as of four months after Racine's initial request for Castillo's file. Thus, Landeo violated MLRPC 1.16(d) by failing to reasonably protect Castillo's interests and to timely surrender papers and property to which Castillo and Racine, Castillo's new lawyer, were entitled.

Clear and convincing evidence also supports the hearing judge's conclusion that Landeo violated MLRPC 1.16(d) in representing Flores. Sometime between December 17 and 27, 2012, Flores terminated Landeo's representation and retained a new lawyer,

Bloom. On December 27, 2012, Bloom mailed and faxed to Landeo a letter requesting Flores's file. On January 2, 2013, Landeo mailed to Bloom a letter in which she stated that she would scan and e-mail to him Flores's file "before the end of the week." As of January 18, 2013, Bloom had not received anything else from Landeo; on that date, Bloom sent to Landeo a second letter requesting Flores's file. On January 24, 2013, almost a month after Bloom's original request, a member of Landeo's staff e-mailed to Bloom scanned copies of Flores's file. In a letter dated February 7, 2013, Bloom reiterated his request for the originals of Flores's file. Two weeks later, on February 22, 2013—almost two months after Bloom's original request—Landeo mailed Flores's file to Bloom. Landeo failed to reasonably take steps to protect Flores's interests by delaying in transmitting copies and the originals of Flores's file to Bloom, thus violating MLRPC 1.16(d).

The hearing judge was correct in concluding that clear and convincing evidence did not establish that Landeo had violated MLRPC 1.16(d) in representing Martinez-Ramos. On December 11, 2012, Vasquez decided not to pay Landeo any additional money; on that day, Vasquez went to Landeo's office to retrieve the documents from Martinez-Ramos's file. In other words, there was no delay in surrendering, or failure to surrender, Martinez-Ramos's file.

**MLRPC 5.3(a), (b), and (c) (Responsibilities Regarding Nonlawyer Assistants)**

MLRPC 5.3 states, in pertinent part:

With respect to a nonlawyer employed or retained by or associated with a lawyer:

(a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm[,] shall make

reasonable efforts to ensure that the [law] firm has in effect measures giving reasonable assurance that the [nonlawyer]'s conduct is compatible with the professional obligations of the lawyer;

(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the [nonlawyer]'s conduct is compatible with the professional obligations of the lawyer; [and]

(c) a lawyer shall be responsible for conduct of [a nonlawyer] that would be a violation of the [MLRPC] if engaged in by a lawyer if:

(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the [nonlawyer] is employed, or has direct supervisory authority over the [nonlawyer], and knows of the conduct at a time when its consequences can be avoided or mitigated[,] but fails to take reasonable remedial action[.]

Here, the hearing judge was correct in concluding that clear and convincing evidence did not establish that Landeo had violated MLRPC 5.3(a) or (b) in representing Flores and Martinez-Ramos, and hearing judge was correct in concluding that Landeo was not vicariously responsible for any nonlawyer's conduct under MLRPC 5.3(c). Although Landeo was a named partner at her law firm, and certainly must have had supervisory authority over office staff and assistants, the hearing judge did not find that Landeo directly supervised office staff and assistants at the law firm, or that nonlawyers employed at the law firm engaged in conduct that was incompatible with Landeo's professional obligations or engaged in conduct that would have been a violation of the MLRPC if Landeo had engaged in it.

## MLRPC 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation)

"It is professional misconduct for a lawyer to[] . . . engage in conduct involving

dishonesty, fraud, deceit[,] or misrepresentation[.]" MLRPC 8.4(c).

Here, as an initial matter, we observe that the Commission charged Landeo with violating MLRPC 8.4(c) only in representing Castillo and Martinez-Ramos, not in representing Flores. And, without specifying a subsection, the hearing judge concluded that Landeo had violated MLRPC 8.4 in representing Castillo, stating: "The [hearing judge] finds by clear and convincing evidence that [Landeo] violated several [MLRPC] in the context of representation of [Castillo] and therefore violated [MLRPC] 8.4." Similarly, without specifying a subsection, the hearing judge concluded that Landeo had violated MLRPC 8.4 in representing Martinez-Ramos, stating: "There is clear and convincing evidence that [Landeo] violated M[L]RPC 8.4 based on her multiple violations of other [MLRPC] in the representation of Martinez[-Ramos.]"

The phrasing of the hearing judge's conclusions of law as to MLRPC 8.4 leads to the logical conclusion that the hearing judge determined that Landeo had violated MLRPC 8.4(a) ("It is professional misconduct for a lawyer to[] violate . . . the" MLRPC.), not MLRPC 8.4(c) ("It is professional misconduct for a lawyer to[] . . . engage in conduct involving dishonesty, fraud, deceit[,] or misrepresentation[.]"). In other words, the hearing judge concluded that, because Landeo had violated other MLRPC in representing Castillo and Martinez-Ramos, she had also violated MLRPC 8.4(a). Upon our independent review, we decline to conclude that clear and convincing evidence establishes that Landeo violated MLRPC 8.4(c) in representing Castillo or Martinez-Ramos. We explain.

In its Exceptions and Recommendation for Sanction, the Commission asserts that the hearing judge concluded that Landeo had violated MLRPC 8.4(c), stating:

The [MLRPC] 8.4(c) violation was related to the misrepresentations made to [] Keener and [] Castillo regarding the status of the [Immediate Family P]etition. The [MLRPC] 8.4(c) violation in [] Martinez[-]Ramos's case is also related to misrepresentations made to [] Martinez-Ramos regarding the filing of her Motion to Stay and [Landeo]'s lack of candor concerning her deportation.

What the Commission has identified as the alleged bases for violations of MLRPC 8.4(c), without more, simply does not rise to the level of clear and convincing evidence that Landeo engaged in "conduct involving dishonesty, fraud, deceit[,] or misrepresentation[.]" And, more importantly, the hearing judge did not find that Landeo engaged in such conduct or otherwise made misrepresentations warranting the conclusion that she violated MLRPC 8.4(c).[25]

At oral argument, in support of the contention that the hearing judge concluded that Landeo had violated MLRPC 8.4(c), Bar Counsel drew this Court's attention to a footnote in the hearing judge's opinion, in which the hearing judge stated:

It should be noted that [Landeo]'s policy was to charge an additional $100 in filing fees set by the U[.]S[.] governmental authorities. While she explains that this was done to "cover direct costs[,]" that is never explained in the retainer agreement with her client. Further, the retainer notes that administrative costs will be billed "separately to the client." Therefore, even

---

[25]At oral argument, Bar Counsel argued that Landeo's staff's communications to Keener and Castillo that the Immediate Family Petition was "in process" was a misrepresentation because the Immediate Family Petition had not yet been filed with USCIS. The hearing judge, however, did not find such a misrepresentation had been made. Indeed, the hearing judge found: "[Landeo]'s office manager told Keener and Castillo that the [Immediate Family Petition] was 'in process[,]' [and] the clients interpreted that to mean that the form was filed and they were just waiting for a receipt." In other words, the hearing judge did not find that Landeo's office manager told Keener and Castillo that the Immediate Family Petition was in process with USCIS; rather, Keener and Castillo simply interpreted the office manager's words as such. And, as Judge Adkins pointed out at oral argument, the phrase "in process" can "have a myriad of meanings"; *i.e.*, telling a client that a form was "in process" did not necessarily mean that the form had been filed.

if not an unreasonable amount for direct costs, it is certainly confusing and deceptive when there is no way to tell the relationship of the routinely added $100 to the actual "direct cost."

As an initial matter, the above statement is in a footnote in the hearing judge's discussion of the findings of facts as to Landeo's representation of Flores; as mentioned above, Bar Counsel did not charge Landeo with violating MLRPC 8.4(c) in representing Flores. And, given its location in the hearing judge's opinion, it is unclear that the hearing judge intended the information to be generally applicable to Landeo's representation of Castillo and Martinez-Ramos as well. As another matter, the footnote follows a discussion of the expert testimony on the reasonableness of the fees that Landeo charged Flores. Simply put, the hearing judge's comment that Landeo's practice of charging an additional $100 in filing fees was "confusing and deceptive" was not made in connection with any analysis of any MLRPC, let alone MLRPC 8.4(c), and, as pointed out, was made in a footnote in the findings of fact.

In short, all that can be gleaned from the hearing judge's opinion is that the hearing judge concluded that Landeo had violated MLRPC 8.4(a). The hearing judge did not make findings of fact or include any discussion supporting a determination that the hearing judge concluded that Landeo had violated MLRPC 8.4(c).[26] Absent such findings of fact or

---

[26]At oral argument, Bar Counsel directed our attention to an exhibit from the parties that supposedly substantiated a violation of MLRPC 8.4(c). That exhibit, appended to the hearing judge's opinion in the record, is entitled "Landeo Attachment." Far from substantiating a violation of MLRPC 8.4(c), however, the Landeo Attachment merely sets forth verbatim all of the MLRPC with which Landeo was charged with violating, including subsections of MLRPC with which she was not charged with violating. For example, the Commission charged Landeo with violating only MLRPC 1.5(a) in all three matters; the

analysis supporting the conclusion of law, we are unwilling to speculate as to the reasoning or the rationale of the hearing judge; instead, we decline to conclude that Landeo violated MLRPC 8.4(c) in representing Castillo or Martinez-Ramos.

**MLRPC 8.4(d) (Conduct That is Prejudicial to the Administration of Justice)**

"It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" MLRPC 8.4(d). "Generally, a lawyer violates MLRPC 8.4(d) where the lawyer's conduct would negatively impact the perception of the legal profession of a reasonable member of the public[.]" Shuler, 443 Md. at 505, 117 A.3d at 45 (brackets, citation, ellipsis, and internal quotation marks omitted).

Here, as an initial matter, we observe that the Commission charged Landeo with violating MLRPC 8.4(d) in representing all three clients; and, the Commission charged Landeo with violating only MLRPC 8.4(d), and not any other subsection of MLRPC 8.4, in representing Flores. As discussed above, the phrasing of the hearing judge's conclusions of law as to MLRPC 8.4 with respect to Castillo and Martinez-Ramos leads to the logical conclusion that the hearing judge determined that Landeo violated MLRPC 8.4(a) ("It is professional misconduct for a lawyer to[] violate . . . the" MLRPC.); the hearing judge did not provide specific analysis that Landeo had violated MLRPC 8.4(d) with respect to

Landeo Attachment, however, sets forth MLRPC 1.5 in its entirety, including MLRPC 1.5(a), (b), (c), (d), and (e). Moreover, the Landeo Attachment does not contain any analysis of the MLRPC violations charged. In sum, the Landeo Attachment provides no support whatsoever for the contention that the hearing judge concluded that Landeo had violated MLRPC 8.4(c).

Castillo and Martinez-Ramos. And, without specifying a subsection, the hearing judge concluded that Landeo had violated MLRPC 8.4 in representing Flores, stating: "Based upon the violations found by the [hearing judge] by clear and convincing evidence, the [hearing judge] finds that [Landeo] violated [MLRPC] 8.4." This, too, appears to be a conclusion that Landeo violated MLRPC 8.4(a) in representing Flores. Nonetheless, upon our independent review, we determine that clear and convincing evidence—credited in the hearing judge's findings of fact—supports the conclusion that Landeo violated MLRPC 8.4(d) in representing all three clients.

As discussed above, although Castillo and Keener provided Landeo the filing fee and all of the documents that were necessary to file the Immediate Family Petition, and Landeo had signed an attorney appearance form, Landeo did not file the Immediate Family Petition with USCIS until nearly eight months later. Although Flores provided Landeo with all of the documents that were necessary to file the Abused Spouse Petition and had signed the Abused Spouse Petition, Landeo did not file the Abused Spouse Petition until nearly three months later. Additionally, although Flores provided Landeo with all of the documents that were necessary to file the Adjustment of Status, Landeo never filed the Adjustment of Status. In representing Martinez-Ramos, Landeo did not file the Notice of Appeal or Motion until more than three months after the deadline, and failed to provide any reasons for the late filing. As a result, USCIS denied the untimely Notice of Appeal or Motion. Additionally, Landeo mailed the Motion to Stay Removal to ICE despite the fact that, per the instructions on the form, the Motion to Stay Removal needed to be hand-delivered to the ICE office in Baltimore. Landeo did not correct the mistake of having

- 43 -

mailed the Motion to Stay Removal. Additionally, Martinez-Ramos retained Landeo to file a work permit application on her behalf, but Landeo never filed the work permit application. And, ultimately, Martinez-Ramos was deported.

Moreover, in representing each client, in addition to displaying a lack of diligence, Landeo failed to deposit attorney's fees and filing fees into an attorney trust account and failed to keep her clients reasonably informed about the status of their matters and to explain matters to the extent reasonably necessary to permit her clients to make informed decisions regarding the representation. Under these circumstances, in representing each client, Landeo engaged in conduct that would negatively impact the perception of the legal profession of a reasonable member of the public. A lawyer violates MLRPC 8.4(d) by, among other things, "failing to represent a client in an adequate manner[,]" and "failing to keep a client informed about the status of a case." Attorney Grievance Comm'n v. Brigerman, 441 Md. 23, 40, 105 A.3d 467, 477 (2014) (citations, brackets, and internal quotation marks omitted). A lawyer also violates MLRPC 8.4(d) by "fail[ing] to keep [his or her] clients advised of the status of the[] representation or, more grievously, fail[ing] to represent diligently [his or her] clients." Attorney Grievance Comm'n v. Thomas, 440 Md. 523, 555, 103 A.3d 629, 648 (2014). See also Attorney Grievance Comm'n v. Olszewski, 441 Md. 248, 268, 107 A.3d 1159, 1170 (2015) ("Where [a lawyer] failed to competently and diligently represent [clients], ultimately resulting in the dismissal of their case(s), [the lawyer] engaged in conduct prejudicial to the administration of justice in violation of [MLRPC] 8.4(d)." (Citation omitted)).

## MLRPC 8.4(a) (Violating the MLRPC)

"It is professional misconduct for a lawyer to[] violate . . . the" MLRPC. MLRPC 8.4(a).

Here, clear and convincing evidence supports the hearing judge's conclusion that Landeo violated MLRPC 8.4(a) in representing Castillo and Martinez-Ramos. As discussed above, Landeo violated MLRPC 1.1, 1.3, 1.4(a)(2), 1.4(a)(3), 1.4(b), 1.5(a), 1.15(a), 1.16(d), and 8.4(d) in representing Castillo and/or Martinez-Ramos.[27]

## (C) Sanction

The Commission recommends that we indefinitely suspend Landeo from the practice of law in Maryland with the right to apply for reinstatement after ninety days.[28] Landeo recommends that we either reprimand her or suspend her "for a definite and limited time period."

In Shuler, 443 Md. at 506-07, 117 A.3d at 46, this Court stated:

> This Court sanctions a lawyer not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession. This

---

[27]The Commission did not charge Landeo with violating MLRPC 8.4(a) in representing Flores, so we decline to conclude that Landeo violated MLRPC 8.4(a) in that instance. However, had the Commission charged Landeo with violating MLRPC 8.4(a) in representing Flores, we would have no difficulty in concluding that clear and convincing evidence supports a conclusion that Landeo violated MLRPC 8.4(a) based on Landeo's other violations of the MLRPC in representing Flores.

[28]On the first page of its recommendation, the Commission mistakenly specified sixty days. The Commission filed in this Court a corrected version of the first page, which should have specified ninety days.

Additionally, at oral argument, when asked whether the recommended sanction would change if this Court concluded that Landeo had not violate MLRPC 8.4(c), Bar Counsel responded in the negative and stated that the recommendation for an indefinite suspension with the right to apply for reinstatement after ninety days would remain the same even absent a conclusion that Landeo violated MLRPC 8.4(c).

- 45 -

Court accomplishes these goals by: (1) deterring other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is unfit to continue to practice law.

In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (1) the MLRPC that the lawyer violated; (2) the lawyer's mental state; (3) the injury that the lawyer's misconduct caused or could have caused; and (4) aggravating factors and/or mitigating factors.

Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MLRPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

Mitigating factors include: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to the Commission or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the MLRPC; and (14) unlikelihood of repetition of the misconduct.

(Brackets, citation, and ellipses omitted).

In <u>Attorney Grievance Comm'n v. David</u>, 331 Md. 317, 324, 318-19, 628 A.2d 178,

- 46 -

181, 179 (1993), this Court indefinitely suspended from the practice of law in Maryland

with the right to apply for reinstatement after six months a lawyer who violated MLRPC

1.1, 1.3, 1.4(a), 1.5(a), 1.15(b), 1.16(d), 5.3(b), 8.1(a), 8.1(b), 8.4(c), and 8.4(d) in

representing four clients. In determining the appropriate sanction, we stated:

> As Bar Counsel points out, [the lawyer]'s representation of the[] four clients
> was marked by serious neglect and inattention. [The lawyer] failed to return
> a fee which was unearned for a period of nine months; he failed to timely
> remit funds [that] he received on behalf of a client; he failed to communicate
> with his clients; and[,] in connection with the investigation of three of the
> complaints, [the lawyer] failed to answer Bar Counsel's requests for
> information. The sanction [that] we impose must provide adequate
> protection to the public and motivate [the lawyer] to adopt appropriate
> practices in the future.

Id. at 323-24, 628 A.2d at 181.

In Attorney Grievance Comm'n v. Mooney, 359 Md. 56, 98, 75, 89-90, 94-95, 81,

87-88, 84, 753 A.2d 17, 39, 27, 33-35, 37, 30, 31 (2000), this Court indefinitely suspended

from the practice of law in Maryland with the right to apply for reinstatement after ninety

days a lawyer who violated MLRPC 1.1, 1.3, 1.4(a)(2), 1.4(a)(3),[29] 1.4(b), 5.1(a), 5.3(b),

8.4(c), and 8.4(d) in representing four clients; we also ordered the lawyer to engage a

monitor to oversee his law practice of law and accounting of funds for two years. In

Mooney, id. at 74, 75, 84, 87, 90, 94-95, 753 A.2d at 26, 27, 32, 33, 35, 37, the lawyer,

among other misconduct, failed to appear at trial, failed to respond to his client's inquiries

---

[29]At the time, MLRPC 1.4(a)(a) and 1.4(a)(3) did not yet exist; the provisions that
are now in MLRPC 1.4(a)(2) and 1.4(a)(3) were in MLRPC 1.4(a), which provided: "A
lawyer shall keep a client reasonably informed about the status of a matter and promptly
comply with reasonable requests for information." See Mooney, 359 Md. at 75, 753 A.2d
at 27.

after he failed to appear at trial, failed to file a motion as originally discussed with a client, failed to communicate with a client for at least four months, provided incorrect legal advice through a member of the lawyer's staff, and failed to take measures to ensure that nonlawyer assistants conducted themselves in a manner compatible with the lawyer's professional obligations. In determining the appropriate sanction, we explained:

> The number and similarities of the complaints before this Court are of great concern. We note that[,] while we have generally suspended lawyers who[,] for the first time[,] have been found to have violated rules relating to competency, we have disbarred subsequent offenders. [The lawyer] appears before us for the first time.

Id. at 98, 753 A.2d at 39 (citation omitted).

In Attorney Grievance Comm'n v. Lee, 393 Md. 546, 567, 563, 556, 903 A.2d 895, 908, 905, 901 (2006), this Court indefinitely suspended from the practice of law in Maryland a lawyer who violated MLRPC 1.3, 1.4(a)(2), 1.4(a)(3),[30] 1.16(d), 3.2, 8.1(b), and 8.4(d). In Lee, id. at 555-57, 903 A.2d at 901-02, the lawyer, among other misconduct, failed to timely appear at a scheduled meeting of creditors on his client's behalf, failed to diligently pursue his client's legal matter, failed to keep his client reasonably informed about the status of the matter, failed to return the client's file after she terminated his representation, and failed to respond to Bar Counsel's requests for information. In determining the appropriate sanction, this Court noted the aggravating factor that the lawyer had received prior attorney discipline, having been reprimanded in one case for violating MLRPC 1.3, 1.4(a)(2), and 1.4(a)(3), and having been indefinitely suspended

---

[30]See *supra* note 29.

with the right to apply for reinstatement after one year in another case for violating MLRPC 1.3, 1.4(a)(2), 1.4(a)(3), 8.1(a), and 8.4(c). Id. at 566, 903 A.2d at 907. Additionally, we stated that the lawyer had not demonstrated remorse and that we were "not convinced" that the lawyer's provision of free services to the complainant was "a remedial act motivated by true remorse, rather than an attempt to procure a withdrawal of the complaint." Id. at 567, 903 A.2d at 908. We also noted that the hearing judge had "made no findings as to whether [the lawyer] established by a preponderance of the evidence any mitigating factors[,]" and concluded that "nothing in the record suggest[ed] that [the lawyer]'s alleged medical condition could be a mitigating factor." Id. at 566, 903 A.2d at 907.

By contrast, in Thomas, 440 Md. at 558, 550-51, 554, 103 A.3d at 650, 645, 647, this Court disbarred a lawyer who violated MLRPC 1.1, 1.3, 1.4(a)(2), 1.4(a)(3), 8.1(b), 8.4(c), and 8.4(d) in representing an immigrant client. In Thomas, id. at 551-52, 554, 555, 103 A.3d at 646, 647, 648, the lawyer, among other misconduct, failed to appear at the client's hearing and told the client that the client did not need to appear at the hearing, stopped responding to the client as the client attempted to ascertain the status of the case, failed to inform the client that the client had been ordered removed from the country, failed to respond to the Commission's requests for information, and misrepresented the status of the case to the client. We noted that there were no mitigating factors and four aggravating factors, namely: (1) an intentional failure "to participate in the disciplinary proceedings or comply with the information requests of the Commission"; (2) "a refusal to acknowledge the wrongful nature of [the lawyer]'s conduct"; (3) "indifference to making restitution to [the client] for the circumstances in which he was left in the lurch"; and (4) "the vulnerable

nature of [the client]'s status" as an immigrant. Id. at 557-58, 103 A.3d at 649. In determining the appropriate sanction, we explained that the lawyer "failed to communicate with his client, failed to complete any of the work that he was retained to complete, and failed to participate in the[ attorney discipline] proceeding[] in any way." Id. at 558, 103 A.3d at 650.

And, in Attorney Grievance Comm'n v. Geesing, 436 Md. 56, 71, 66, 58, 80 A.3d 718, 727, 724, 719 (2013), this Court suspended from the practice of law in Maryland for ninety days a lawyer who violated MLRPC 3.3(a)(1), 5.3(a), and 8.4(d) by routinely authorizing two non-lawyer members of his law firm's staff to sign his name on documents—including affidavits that the staff members falsely notarized—in foreclosure filings. In determining the appropriate sanction, we noted that the lawyer's conduct was aggravated by only two aggravating factors—a pattern of misconduct and multiple offenses—and was mitigated by seven factors, including:

> (a) the absence of a prior disciplinary record; (b) the absence of a dishonest or selfish motive; (c) timely good-faith efforts to make restitution or to rectify consequences of misconduct; (d) full disclosure to the Commission and cooperation and participation in the attorney discipline proceeding; (e) good character and reputation; (f) remorse; and (g) significant press coverage of the issue and considerable time and effort that the lawyer and the lawyer's firm spent correcting the problem.

Id. at 67, 70, 80 A.3d at 725, 726 (citation, ellipsis, internal quotation marks, and brackets omitted).

Here, Landeo violated MLRPC 1.1, 1.3, 1.4(a)(2), 1.4(a)(3), 1.4(b), 1.5(a), 1.15(a), 1.15(c), 1.16(d), and 8.4(d) by: failing to provide competent representation to Martinez-Ramos; failing to provide diligent representation in time-sensitive immigration matters and

waiting months to file documents; failing to keep her clients reasonably informed about the status of their matters, promptly comply with her clients' reasonable requests for information, and explain matters to the extent reasonably necessary to permit her clients to make informed decisions regarding the representation; charging and collecting attorney's fees for services that she failed to provide to any meaningful degree or at all; failing to deposit attorney's fees and filing fees into an attorney trust account; failing to deposit Keener's and Castillo's unearned attorney's fees and Flores's unearned attorney's fees into an attorney trust account without the clients' informed consent, confirmed in writing, to a different arrangement; failing to reasonably protect Castillo's and Flores's interests and timely surrender files to which Castillo's and Flores's new lawyers were entitled; and engaging in conduct that was prejudicial to the administration of justice. As to Landeo's mental state, the record demonstrates that Landeo acted intentionally in depositing her clients' attorney's fees and filing fees into an account other than an attorney trust account, and that Landeo, at a minimum, acted negligently, if not knowingly, in failing to provide competent and diligent representation and in failing to adequately communicate with her clients.

Landeo injured Castillo by failing to provide agreed-upon services in a diligent manner, thus necessitating Castillo's and Keener's decision to terminate Landeo's representation and incur the expense of retaining a new immigration lawyer, and causing additional delay in the process of Castillo's obtaining legal permanent resident status. Similarly, Landeo injured Flores by failing to provide agreed-upon services in a diligent manner, thus necessitating Flores's decision to terminate Landeo's representation and incur

the expense of retaining a new immigration lawyer, and causing additional delay in the process of Flores's obtaining a green card for work authorization. And, Landeo injured Martinez-Ramos by failing to timely file the Notice of Appeal or Motion, failing to explain the late filing, and failing to hand-deliver the Motion to Stay Removal as required, ultimately resulting in Martinez-Ramos's detention and deportation. Additionally, in each matter, Landeo engaged in conduct that would negatively impact the perception of the legal profession of a reasonable member of the public.

The hearing judge found three aggravating factors: (1) "a pattern of misconduct"; (2) "multiple violations of the" MLRPC; and (3) a refusal "to acknowledge the wrongfulness of [Landeo's] misconduct[.]" Upon our review, we note five aggravating factors. First and second, Landeo engaged in a pattern of misconduct and committed multiple violations of the MLRPC. Third, Landeo has refused to acknowledge the misconduct's wrongful nature.[31] Fourth, Landeo's clients were vulnerable victims.[32] And, fifth, Landeo has substantial experience in the practice of law, as she had been a member

---

[31]To be sure, at oral argument, Landeo's counsel seemingly acknowledged that Landeo violated MLRPC 1.15(a) by failing to place attorney's fees and filings fees into an attorney trust account, *i.e.*, that Landeo's misconduct with respect to fees was wrong. However, the record does not demonstrate that Landeo has acknowledged the wrongfulness of her misconduct in any other respect.

[32]In Thomas, 440 Md. at 558, 103 A.3d at 649, we stated:

We have recognized previously the special vulnerability of immigrants as clients. *See Attorney Grievance Commission of Brisbon*, 422 Md. 625, 642, 31 A.3d 110, 120 (2011) (describing the purposes of the Maryland Immigration Consultant Act . . . as "to offer simple protection to extremely vulnerable people, largely unable or unwilling as a practical matter to defend themselves, from being preyed on").

of the Bar of Maryland for approximately a decade at the time of her misconduct.[33]

The hearing judge found one mitigating factor: the absence of prior attorney discipline. Upon our review, we note only the same mitigating factor. We decline to determine that Landeo's refunds to Flores and Vasquez for filings fees constitute a timely good faith effort to make restitution because the refunds were mailed to Flores and Vasquez on July 30, 2015, more than two-and-a-half years after Flores terminated Landeo's representation and after Martinez-Ramos was detained and deported, and only four days before the hearing in this attorney discipline proceeding began. In other words, the refunds were untimely.

We also decline to consider as mitigation the circumstance that Landeo's law firm's bank accounts are periodically reviewed by a certified public accountant pursuant to a conditional diversion agreement entered into by Landeo's law partner.[34] Although Landeo's law firm may benefit from the terms of her partner's conditional diversion

---

[33]Cf. Attorney Grievance Comm'n v. McDonald, 437 Md. 1, 46, 85 A.3d 117, 143 (2014) ("[H]aving worked as a prosecutor for over a decade before the events in this case occurred, McDonald had substantial experience in the practice of law that should have given him an experiential basis from which to know [that] his actions were unethical." (Citation omitted)); Attorney Grievance Comm'n v. Worsham, 441 Md. 105, 136, 112, 114, 105 A.3d 515, 533, 519, 520 (2014) (This Court stated that a lawyer's misconduct was aggravated by "substantial experience in the practice of law" where, eleven years after this Court admitted the lawyer to the Bar of Maryland, the lawyer began frivolously "arguing that the federal government did not have the authority to tax his earnings as income.").

[34]Landeo provided us with information regarding her law partner's conditional diversion agreement. Normally we would not discuss disciplinary action with respect to a lawyer other than the respondent. In this case, because Landeo has proffered information regarding her law partner's conditional diversion agreement as mitigation, and because the hearing judge included the information in his opinion, we address the matter.

agreement, the existence of the conditional diversion agreement does not constitute mitigation as to Landeo. Indeed, Landeo herself has no obligations under her partner's conditional diversion agreement. Moreover, Landeo's partner did not enter into the conditional diversion agreement until July 2015—several years after Landeo's misconduct occurred. In other words, Landeo did not take it upon herself to timely correct the problems with her law firm's accounting practices.

We agree with the Commission that the appropriate sanction for Landeo's misconduct is an indefinite suspension from the practice of law in Maryland with the right to apply for reinstatement after ninety days. Among other misconduct, Landeo failed to provide diligent representation, failed to adequately communicate with her clients, failed to place fees into an attorney trust account, failed to timely turn over client files once her representation was terminated, and engaged in conduct that was prejudicial to the administration of justice. Landeo's misconduct resulted in actual injury to her clients— Castillo and Flores experienced delays in obtaining their desired immigration statuses, and were forced to terminate Landeo's representation and seek new counsel, and Martinez-Ramos was detained and deported. Landeo also engaged in conduct that would negatively impact the perception of the legal professional of a reasonable member of the public. Landeo's misconduct is aggravated by several factors, including a pattern of misconduct and multiple violations of the MLRPC in representing three clients, a refusal to acknowledge her misconduct's wrongful nature, and substantial experience in the practice of law. Moreover, as immigrants who had entered the United States illegally, Castillo, Flores, and Martinez-Ramos were vulnerable. To protect the public, we must impress upon

Landeo, and all other lawyers, the importance of diligent representation and adequate communication in immigration cases.

Like the lawyer in David, 331 Md. at 318-19, 323, 628 A.2d at 179, 181, Landeo violated MLRPC 1.1, 1.3, 1.4(a), 1.5(a), 1.16(d), and 8.4(d) in representing multiple clients, and her representation can be characterized as being "marked by serious neglect and inattention." Notably, unlike Landeo, the lawyer in David, id. at 324, 318-19, 628 A.2d at 181, 179—who was indefinitely suspended from the practice of law in Maryland with the right to apply for reinstatement after six months (i.e., ninety days longer than the sanction we impose on Landeo)—violated MLRPC that Landeo did not violate, including MLRPC 8.1(a), 8.1(b), and 8.4(c). Additionally, like the lawyer in Mooney, 359 Md. at 97-98, 75, 81, 753 A.2d at 39, 27, 30, where the lawyer was indefinitely suspended from the practice of law in Maryland with the right to apply for reinstatement after ninety days, Landeo violated MLRPC 1.1, 1.3, 1.4(a)(2), 1.4(a)(3), 1.4(b), and 8.4(d) in connection with multiple matters, but her misconduct is mitigated by the absence of prior attorney discipline. And, like the lawyer in Lee, 393 Md. at 567, 563, 556, 903 A.2d at 908, 905, 901, where the lawyer was indefinitely suspended from the practice of law in Maryland, Landeo violated MLRPC 1.3, 1.4(a)(2), 1.4(a)(3), 1.4(b), 1.16(d), and 8.4(d), failed to diligently pursue her clients' interests in a timely manner, and failed to keep her clients reasonably informed about the status of their matters.

Unlike the lawyer in Geesing, 436 Md. at 71, 67, 68, 80 A.3d at 727, 725, however, where the lawyer was suspended from the practice of law in Maryland for ninety days, Landeo's misconduct is aggravated by five factors (not two factors), including the

vulnerability of the victims and a refusal to acknowledge her misconduct's wrongful nature, and is mitigated only by the absence of prior attorney discipline (instead of seven factors, such as remorse, timely good faith efforts to rectify the consequences of the misconduct, and good character). Simply put, Landeo's misconduct is accompanied by more aggravating factors and far fewer mitigating factors than the lawyer's misconduct in Geesing, and necessarily warrants a more severe sanction than the ninety-day suspension that we imposed in Geesing. Nevertheless, unlike in Thomas, 440 Md. at 558, 551-55, 103 A.3d at 650, 646-48, where the lawyer was disbarred, Landeo did not fail to attend a hearing, misrepresent the status of the case to a client, fail to tell a client that he or she had been ordered removed from the country, fail to participate in this attorney discipline proceeding, or fail to complete any work whatsoever for which she was retained to complete. In other words, although certainly egregious and displaying a gross lack of competence, and a pattern of a lack of diligence and adequate communication, Landeo's misconduct does not rise to a level warranting disbarment.[35]

---

[35]Generally, where a lawyer violates MLRPC 8.4(c) by engaging in intentional dishonest conduct, disbarment—not an indefinite suspension—is the appropriate sanction, absent compelling extenuating circumstances. See, e.g., Thomas, 445 Md. at 402, 127 A.3d at 576 (The lawyer "violated MLRPC 8.4(c)[ by], for the purpose of continuing to practice law, [] dishonestly refrain[ing] from informing Bar Counsel that he was using alcohol and/or opiates and that, on two occasions, he had been discharged from a substance abuse program for failing to attend the required number of counseling sessions. Absent compelling extenuating circumstances justifying a lesser sanction, intentional dishonest conduct by a lawyer will result in disbarment. Here, there are no mitigating factors, let alone compelling extenuating circumstances, that would have justified a lesser sanction." (Citation and internal quotation marks omitted)).

By contrast, an indefinite suspension is an appropriate sanction where a lawyer violates multiple MLRPC, but not MLRPC 8.4(c). See, e.g., Attorney Grievance Comm'n

Accordingly, for the above reasons, we indefinitely suspend Landeo from the practice of law in Maryland with the right to apply for reinstatement after ninety days. The suspension will begin thirty days after the date on which this opinion is filed.

> **IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JENNIFER VETTER LANDEO.**

---

v. Mungin, 439 Md. 290, 322, 319, 96 A.3d 122, 140, 138 (2014) (This Court indefinitely suspended from the practice of law in Maryland with the right to apply for reinstatement after six months a lawyer who had violated MLRPC 1.1, 1.15(a), 1.15(d), and 8.4(d), Maryland Rule 16-609(a)–(c), and Md. Code Ann., Bus. Occ. & Prof. (1989, 2010 Repl. Vol.) § 10-306, but had not violated MLRPC 8.4(c), and had engaged in negligent, rather than intentional, misconduct in mishandling his attorney trust account.). In other words, a violation of MLRPC 8.4(c) is not a predicate for imposition of an indefinite suspension.